Dr. Powell D. McCLELLAN,
Plaintiff/Appellant,

v.

The BOARD OF REGENTS OF the
STATE UNIVERSITY and Community
College System of Tennessee and Middle
Tennessee State University, Defendant/Appellee.

Supreme Court of Tennessee,
at Nashville.

April 29, 1996.

Charles Hampton White, Cornelius & Collins, Nashville, for Appellant.

Charles W. Burson, Attorney General & Reporter, James C. Floyd, Assistant Attorney General, Nashville, for Appellee.

WHITE, Justice.

This case poses substantive and procedural questions pertaining to an appeal under the Uniform Administrative Procedures Act. The first issue is whether substantial and material evidence supports the finding of a violation of the sexual harassment policy of the Tennessee State Board of Regents and of Middle Tennessee State University. The second issue is whether the procedures followed in conducting the administrative hearing were appropriate. For the reasons set forth, we affirm the part of the decision of the Court of Appeals which upheld the finding of sexual harassment. We reverse the part of that court's decision which vacated one finding and the sanction order. We remand the case for the imposition of the sanctions set forth in the final order of the administrative tribunal.

### I.

Dr. Powell McClellan is a twenty-two year veteran of the Middle Tennessee State University faculty. There, he teaches in the Department of Health, Physical Education, and Recreation. He holds Ed.D. and M.E.D. degrees from the University of Arkansas. In the summer of 1991, Dr. McClellan taught a course in the physiology of exercise, a portion of which involved teaching the students to administer electrocardiograms.

During the 1991 summer session, Ms. Lea White, an undergraduate student, worked as Dr. McClellan's assistant. On July 25th, three female students were performing an EKG on Ms. White when they began experiencing difficulty with the equipment. Ms. White removed her bra in order to try to improve the electrode connections. The students turned the equipment off and back on to try and restart it. When it still would not function properly, one of the students went, at Ms. White's direction, to seek verbal instructions from Dr. McClellan. Dr. McClellan was asked for instructions and asked not to enter the room as Ms. White was not wearing a shirt. He entered, nonetheless, removed a tee shirt which had been given

Ms. White to cover with, and remarked that Ms. White was "no Dolly Parton."

The next day Dr. McClellan asked Ms. White if she believed in "equal rights." When she said she did, he inquired why women should not remove their shirts for EKG procedures as men did. He also commented that since she had several brothers, being nude around males should not affect her.

Ten days later Ms. White made a formal complaint against Dr. McClellan to Dr. Whaley, the department head. Dr. Whaley referred Ms. White to the University's affirmative action officer who investigated the complaint and, eventually, instituted charges. Dr. McClellan was charged with five violations of Tennessee State Board of Regents' policies. Two of the five pertained to Ms. White. In addition to the incident regarding the EKG, the charges included Ms. White's allegation that Dr. McClellan had required her to "get coffee ... [and] run errands for him which she did out of fear of retaliation." The remaining three allegations did not pertain to Ms. White, did not form the basis for the sanctions against Dr. McClellan, and will not be discussed in this opinion.[1]

The Notice of Hearing and Charges sent to Dr. McClellan included the following statement: "The hearing will be conducted in accordance with the Tennessee Uniform Administrative Procedures Act, T.C.A. § 4–5–101, et seq." Upon request, a hearing was conducted. A hearing officer, John David Hayes, presided over the hearing. A hearing committee consisting of two professors, a graduate student, and an undergraduate student served as the triers of fact.

Before the proceeding began, the hearing officer described his role as being responsible for ruling on evidentiary matters and matters of law. He introduced the committee and described their role as factfinders. Neither side questioned or objected to the procedure. At the close of the hearing, the hearing officer announced that the "Committee will not render a decision today." After in-

---

1. One of the remaining allegations, added by the affirmative action officer and alleged to be racial harassment, was found to constitute offensive and unprofessional conduct by the hearing committee, but not to constitute a violation of board policy.

quiring about when counsel might file proposed findings of fact and conclusions of law, the hearing officer concluded:

> The committee will go ahead and take this under advisement, and we'll advise you at another time as to what we need to do with the findings of fact and conclusions of law.

On December 16, 1991, an Initial Order was issued. The Order contained factual findings [2] and legal conclusions and was signed by the hearing officer and the members of the hearing committee.[3] It unanimously ordered that: (1) Dr. McClellan submit to sensitivity counseling "to assist him in conducting more appropriate and professional interactions with students;" (2) Dr. McClellan not be allowed to teach the only section of a required course offered for three years and that course substitutions be allowed for students; (3) Dr. McClellan be required to administer the EKG procedure pursuant to formally developed and approved guidelines; (4) students be informed that the EKG procedure is voluntary; and (5) Dr. McClellan not be allowed to teach the next summer session for which he was scheduled to teach. Additionally, the Order specified the review procedures. Specifically, it detailed the procedure for filing a Petition for Appeal to the university president and the procedure for filing a Petition for Reconsideration of the Initial Order. *See* Tenn.Code Ann. §§ 4–5–315, –317 (1991 Repl.).

Dr. McClellan appealed the Initial Order. He challenged the sufficiency of the evidence, the competency of the committee, and the severity of the sanctions. Although he did not cite procedural irregularities as a basis for his appeal, Dr. McClellan characterized the Order as reflecting "an intemperate, emotional response to evidence by a committee consisting of laymen, untrained in inter-

pretation of TBR policies or policies of MTSU, and ... grossly improper, and excessive...." He requested an opportunity to present briefs and oral argument before the Agency.[4]

Following the filing of briefs, University President James E. Walker filed a Final Order on May 26, 1992, which upheld the Initial Order in its entirety. Pursuant to Tennessee Code Annotated Section 4–5–322, Dr. McClellan petitioned the Davidson County Chancery Court for review, reversal, and vacation of the Final Order. The petition alleged that: (1) irrelevant, prejudicial evidence was admitted against Dr. McClellan; (2) the hearing officer did not instruct the hearing committee on legal principles, including the standard of proof and did not allow an opportunity to file proposed findings and conclusions; (3) Dr. McClellan's conduct was not a violation of the Board of Regents policy; (4) the sanctions imposed were unconstitutional in that they unlawfully restrict the terms and conditions of employment; (5) the hearing procedure used violated the law; and (6) the President's findings were arbitrary, capricious, and constituted an abuse of discretion.

The Chancellor affirmed the Final Order following a review under Tennessee Code Annotated Section 4–5–322. Specifically, the Chancellor found that substantial and material evidence supported the conclusion that Dr. McClellan had violated the policy and guidelines of the Tennessee State Board of Regents. Additionally, the Chancellor upheld the sanctions since "judicial review is limited to considering whether the remedy is illegal or an abuse of discretion" and the remedy imposed did not constitute either an illegality or an abuse of discretion. The Chancellor declined to address the alleged procedural

---

**2.** The Initial Order found evidence to substantiate the EKG incident; found that Ms. White had been subjected to unreasonable and demeaning demands for personal service; found that Dr. McClellan had made comments to a black student attributing knee injuries to "picking cotton in Lincoln County;" and found that Dr. McClellan used the black student for various class demonstrations by making chalk marks on his body. The two remaining allegations were deemed unfounded.

**3.** The Order concluded that Dr. McClellan's conduct toward Ms. White constituted a violation of TBR Guideline P–080 as promulgated by Middle Tennessee State University, Policy No. I:01:22.

**4.** "Agency" as defined in the Uniform Administrative Procedure Act includes any "board, commission, committee, department, officer, or any other unit of state government authorized ... to determine contested cases." Tenn.Code Ann. § 4–5–102(2) (1991 Repl.).

irregularities since the "procedural issues cannot be raised for the first time on judicial review."

On his appeal as of right to the Court of Appeals, Dr. McClellan raised the same two issues he presents to this Court regarding the sufficiency of the evidence and the procedures employed. The Court of Appeals affirmed the finding of sexual harassment based on the EKG incident, upheld the procedures used to conduct the hearing, but dismissed the allegations pertaining to Dr. McClellan's demeaning demands holding that the initial charge did not give notice of the allegations. Consequently, the Court of Appeals modified the sanctions imposed to exclude those related to that incident and remanded to the tribunal.

## II.

We begin our review with an in-depth analysis of the statutes that outline the procedure to be used under the Uniform Administrative Procedures Act for hearings of this kind.

The Uniform Administrative Procedure Act sprawls through dozens of sections of Title 4, chapter 5 of Tennessee Code Annotated. While it focuses on both an agency's power to make rules and its power to determine contested cases under its rules, it is only the latter subject that concerns us here. The entire chapter, however, is entitled to a "liberal construction [with] any doubt as to the existence or the extent of a power conferred ... resolved in favor of the existence of the power." Tenn.Code Ann. § 4–5–103(a) (1991 Repl.).

■ Part 3 of the Act sets forth the various procedures for hearing and determining contested cases at the agency level and on appeal. In any contested case, the parties are first entitled to notice, which must include "[a] statement of the ... nature of the hearing, ... [a] statement of the legal authority and jurisdiction under which hearing is to be held, ... and [a] short and plain statement of the matters asserted." Tenn.Code Ann. § 4–5–307(b)(1)(2) & (3)

(1991 Repl.). Here, Dr. McClellan was advised that he could appear before a hearing committee for a hearing conducted in accordance with the Uniform Administrative Procedures Act. The Notice set forth the Act as the legal authority for the hearing. It also contained allegations of fact which plainly stated the accusations.[5]

■ Unlike the Court of Appeals, we do not find that the Notice failed to satisfy "basic due process." The specific notice requirements in this context are set forth in the statute, Tenn.Code Ann. § 4–5–307(b)(3) (1991 Repl.) ("short and plain statement of the matters asserted"), and in the Board of Regents policy, TBR Policy No. 1:06:00:05 § 8 (identical language). Neither provision requires the citation to the specified regulations as suggested by the Court of Appeals.

■ Basic due process requires "notice reasonably calculated under all the circumstances, to apprise interested parties" of the claims of the opposing parties. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The purpose of due process requirements is to notify the individual in advance in order to allow adequate preparation and reduce surprise. *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1562–63, 56 L.Ed.2d 30 (1978). Here, the Notice set forth specifically the facts which were alleged. The evidence at trial mirrored the allegations. The Notice more than adequately satisfied constitutional due process as well as the notice requirements of the statute and the regulation.

The Court of Appeals set aside the Agency's factual finding regarding Dr. McClellan's demeaning demands on Ms. White not because the evidence did not support the finding, but because the notice "cited no statute or regulation prohibiting intimidation ... except in connection with sexual [harassment]." First, as we have noted, agencies are not required to cite the offended regulation in the notice of hearing. They are only required to include a "short and plain state-

---

**5.** The notice did not contain the students' names but clearly alleged both incidents pertaining to

Ms. White and to the minority student.

ment of the matters asserted." Tenn.Code Ann. § 4–5–307(b)(3) (1991 Repl.).

More importantly, however, in this Notice the Agency did cite specific regulations deemed to have been violated. The Court of Appeals mistakenly concluded that the cited regulations pertained only to intimidation on the basis of sexual harassment and not to "unprofessional, improper, and immoral" intimidation. We respectfully disagree. In addition to the board policies pertinent to sexual harassment, TBR Policy No. 2:02:10:01; 5:01:02:00; & Guideline P–080, the Agency cited and attached Board Policy 5:02:0300, Academic Freedom, Responsibility, and Tenure. Section 15 of that policy provides that a faculty member "may be terminated for adequate cause, which includes the following: . . . (e) capricious disregard of accepted standards of professional conduct." [6]

Thus, it is clear that Dr. McClellan had adequate prehearing notice of the facts which would be presented against him and of the policies which his conduct might be deemed to violate. This more than satisfies the constitutional due process requirements and the specific statutory and regulatory notice requirements.

Having found that the Notice complied with the law, we turn next to the hearing procedure itself. The Notice advised Dr. McClellan that his hearing would be conducted by a hearing committee "in accordance with Tennessee Uniform Administrative Procedures Act. . . ." The Act provides for hearings in contested cases to be conducted by hearing panels "in the presence of an administrative law judge or hearing officer," Tenn.Code Ann. § 4–5–301(a)(1) (1991 Repl.), or by the judge or hearing officer alone. *Id.* at (2). When the first method is selected, the judge or hearing officer presides, determines the admissibility of evidence, and advises the panel as to the law. *Id.* at (b). The judge or hearing officer may not participate in the determination of factual questions un-

less the judge or hearing officer is an agency member. *Id.*

Dr. McClellan challenges the procedure based on his contention that the hearing panel must be comprised of "members of the Board of Regents or MTSU." He further insists that the Uniform Administrative Procedures Act does not "provide for the utilization of a faculty committee or a hearing committee. . . ."

■ We disagree. The Act expressly provides for the use of hearing committees. The committees are required to have "the requisite number of members of the agency as prescribed by law." Tenn.Code Ann. § 4–5–301(a)(1) (1991 Repl.). While the Act does not define "member," its definition of "agency" renders Dr. McClellan's argument meaningless. "Agency" includes boards, commissions, departments, officers, and units of state government. Tenn.Code Ann. § 4–5–102(2) (1991 Repl.). While the argument is soluble with reference to boards, commissions, and departments, it loses its reasoning when applied to officers and units of state government. We are required to construe terms reasonably and not in a fashion which will lead to an absurd result. *Loftin v. Langsdon,* 813 S.W.2d 475 (Tenn.App.), *perm. to appeal denied,* (Tenn.1991). Thus, we do not impose the very limited definition of "member" suggested by Dr. McClellan.

Under the statute a hearing committee must be constituted as required by law. The Tennessee State Board of Regents' Guidelines, which were promulgated in accordance with the Act's rulemaking provisions, establish uniform hearing procedures for contested cases under the Uniform Administrative Procedures Act. The guidelines provide that

■ hearing committee may be appointed by the president . . . from the administrative, professional staff and/or appropriate employees or students at the institution or school.

TBR Policy No. 1:06:00:05 § 5(c). This hearing committee met those requirements.

---

6. The first page of the Notice says: "TBR policy . . . states that incompetence, indolence, intellectual dishonesty, serious moral dereliction, arbitrary and capricious disregard of standards of

professional conduct, among others, will be grounds for dismissal or other disciplinary matters." A copy of the policy is attached to the Notice as exhibit 4.

■ While we find nothing prejudicial about the hearing procedure employed, particularly in light of the specific guideline, we rest our decision to affirm the procedure on three other equally important points. First, we focus on the procedural and substantive safeguards which followed the hearing. In this case, the hearing officer and the committee issued an Initial Order. Such an order is required only in cases in which the hearing officer sits alone. Tenn.Code Ann. § 4–5–314(b) (1991 Repl.). The Initial Order contained specific findings of fact and conclusions of law and comported with all statutory requirements. *Id.* at (c).

Dr. McClellan appealed the Initial Order to the University President, the person designated by agency rule. *Id.* at –315(b). He did not request a rehearing based on procedural irregularities. *Id.* at –317(a). He did not raise the issues he now presents in his Petition for Appeal, though required by statute to state the basis for the appeal. *Id.* at –315(c).

On appeal, the President, as the person reviewing the Initial Order, was required to exercise the same authority that the Agency would have had to render a decision had the Agency presided. *Id.* at (d). In effect, the review conducted by the President is de novo on the record. The reviewing agency or designated person can require a transcript, must allow briefs, and can allow oral argument. The reviewer may affirm, reverse, or require further proceedings. *Id.* at (d)–(h). Nothing suggests that the review procedure which preceded the issuance of the Final Order was anything but complete. Consequently, in effect, the actions of the hearing officer and committee became irrelevant after the review and entry of the Final Order.

■ A second reason for our ruling affirming the procedures used is implicit in the first discussion. Dr. McClellan did not object to the hearing procedures before the hearing, at any time during the hearing, after the hearing, or in his Petition for Appeal. His first complaint was in his Petition for Judicial Review. One appearing before an administrative tribunal must make timely objections to procedural errors and must raise the errors at the administrative level in order to preserve them for consideration in a petition for judicial review. *In re Billing & Collection Tariffs of So. Cent. Bell,* 779 S.W.2d 375, 380 (Tenn.App.), *perm. to appeal denied,* (Tenn.1989).

Judicial review of an agency decision is confined to the administrative record, except in limited circumstances.[7] *Metropolitan Gov't v. Shacklett,* 554 S.W.2d 601 (Tenn. 1977). It follows that it is no less incumbent for a party to an administrative proceeding to raise issues of procedural irregularity than it is for a party in a judicial proceeding. The administrative tribunal, like the trial court, must be given the opportunity to correct procedural errors. Allowing parties to acquiesce in the procedures, but to challenge those same procedures on appeal is inefficient and unreasonable. Had Dr. McClellan complained of the procedure initially, or even in his Petition for Appeal of the Initial Order, the procedures could have been clarified or even modified. He did not raise the issue until long after it could have been explored and, if necessary, rectified. He cannot be heard to complain at this late date.[8]

Our final reason for affording Dr. McClellan no relief on his procedural challenges is the Act itself. We have already noted the liberal construction which we must give the Act resolving issues in favor of an agency's power. Tenn.Code Ann. § 4–5–103(a) (1991 Repl.). We have alluded to the deference required of agency actions. In addition, the Act requires that "[n]o agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified … unless for errors which affect the merits of the decision." *Id.* at –322(i) (1995 Supp.). The Davidson County Chancery Court and the Court of Appeals (with the exception already discussed) found no error affecting the merits. While we realize that this statutory

---

7. A party who alleges that procedural irregularities occurred that are not shown on the record may request that the Chancery Court take proof. Tenn.Code Ann. § 4–5–322(g) (1995 Supp.).

8. Notably, Dr. McClellan did not request that the Chancery Court take proof on the alleged irregularities.

"harmless error" rule specifically applies to the "reviewing court," we find that none of the complaints raised by Dr. McClellan affected the decision which was clearly supported by the evidence and subjected to multiple reviews. Dr. McClellan was provided a fair hearing and meaningful review in accordance with the Uniform Administrative Procedures Act. We deny relief on the basis of the claimed procedural irregularities.

### III.

■ The second issue for our consideration is whether substantial and material evidence supports the findings that Dr. McClellan violated the applicable policies pertaining to harassment. Dr. McClellan challenges the factual findings as being insufficient. We must determine whether "such relevant evidence as a reasonable mind might accept to support a rational conclusion and ... to furnish a reasonably sound basis for the action" exists on this record. *Pace v. Garbage Disposal of Wash. Co.*, 54 Tenn.App. 263, 390 S.W.2d 461, 463 (1965).

■ The State Board of Regents Policy in applicable part states:

II. General Statement

Sexual harassment and racial harassment have been held to constitute a form of discrimination prohibited by Title VII of the Civil Rights Act of 1964, as amended and Title IX of the Educational Amendments of 1972. Other types of harassment are prohibited by applicable law. An institution or school may be held liable pursuant to Title VII and/or lose federal funds pursuant to Title IX for failure to properly investigate and remedy claims of sexual or racial harassment.

A. Generally, sexual harassment may be defined as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when one of the following criteria is met:

. . . . .

3. such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or

educational experience or creating an intimidating, hostile or offensive work or educational environment. Whether the alleged conduct constitutes sexual harassment depends upon the record as a whole and the totality of the circumstances, such as the nature of sexual advances in the context within which the alleged incident occurred.

Thus, sexual harassment may occur when conduct of a sexual nature affects an individual's work or educational experience or creates an intimidating, hostile, or offensive work or educational environment. The policy correctly does not differentiate between sexual harassment in the workplace and sexual harassment in an academic setting. There is no meaningful difference.

In analyzing the evidence in this case we turn, as we often have in cases under our state's Human Rights Act, to Title VII, the federal employment discrimination statute. Recently we noted in *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn.1996) that the United States Supreme Court first recognized hostile environment harassment under Title VII in the case of *Meritor Saving Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In *Meritor*, the Court recognized that "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." 477 U.S. at 65, 106 S.Ct. at 2405 (citing *Rogers v. E.E.O.C*, 454 F.2d 234 (5th Cir.1971)). When the harassing conduct has "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment," it is actionable. *Id.* at 65, 106 S.Ct. at 2404–05.

Although *Meritor* and *Rogers* were employment discrimination cases, their rationales are applicable in the academic environment as well. *See Doe v. Taylor Indep. School Distr.*, 975 F.2d 137, 149 (5th Cir. 1992). "Women need not endure sexual harassment by state actors under any circumstances, the school setting included." 975 F.2d at 149.

Here, the State Board of Regents policy specifically defined sexual harassment.

That definition includes: "Unwelcome sexual advances ... and other verbal or physical conduct of a sexual nature when ... such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or educational experience or creating an intimidating, hostile or offensive work or educational environment." Guideline P–080, II, A. 3. Thus, it is apparent that the Board policy mirrors the present United States Supreme Court holdings defining sexual harassment. Our inquiry is whether material and substantial evidence in this case establishes that Dr. McClellan's conduct constituted sexual harassment of Ms. White.

■ Like most disputes that are resolved in our courts or administrative tribunals, the evidence in this case is controverted. Ms. White and three eyewitnesses detailed the conduct of Dr. McClellan during the administration of Ms. White's EKG. Their testimony is consistent. Further, their testimony establishes, at the very least, verbal conduct of a sexual nature which interfered with Ms. White's educational experience. Ms. White's testimony, more explicit than the others, establishes inappropriate physical conduct, including physical contact as well.

Conversely, Dr. McClellan's testimony casts an innocent light on the episode. His witnesses, while corroborative of portions of his testimony, were not physically present in the EKG room. Their testimony is therefore less probative on what occurred inside than is the testimony of the persons actually present. Based on these facts, a reasonable person could conclude that Dr. McClellan's conduct was of a sexual nature and created an offensive educational environment for Ms. White. Specifically, Ms. White detailed the effect that the conduct had on her. While Dr. McClellan emphasizes that she functioned well enough to get an "A" in the class, that does not foreclose a finding that the environment was offensive or even intimidating. History is replete with examples of determined persons who fared well despite adversity.

■ Dr. McClellan argues that his absence of prurient intent bars a finding of sexual harassment. We disagree. The definition of sexual harassment set forth in the guidelines, which is the equivalent of that in the statutes, demonstrates that the focus is on the effect of the conduct on the victim rather than the intent of the actor. Ms. White described herself as shy and private. Her demeanor on the stand, gleaned from her testimony, supports this description. The incidents caused her to seek psychological counseling and treatment for depression.

Dr. McClellan repeatedly described his remark as "flippant" and "facetious" arguing that it "strains credulity to believe that a reasonable person" could be affected. This argument, while wholly consistent with Dr. McClellan's crude manner, disregards the objective standard applied in the Sixth Circuit and in Tennessee *Yates v. Avco Corp.*, 819 F.2d 630, 637 (6th Cir.1987). Applying that standard, rather than the approach taken by Dr. McClellan, we conclude with little difficulty that the incident violated the Board Policy on sexual harassment.[9]

■ Dr. McClellan also argues that his conduct cannot rise to the level of sexual harassment because it was an isolated incident. While acts must be "sufficiently severe or pervasive" to constitute sexual harassment, that requirement does not, by definition, exclude cases in which a single incident occurs. If a single incident is severe, it may be actionable as sexual harassment despite the fact that the conduct was not repeated. In other words, conduct may be actionable because of frequency or gravity. *See e.g., Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir.1991); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3rd Cir.1990); *Carrero v. New York City Housing Authority*, 890 F.2d 569, 578 (2nd Cir.1989). A single incident, of sufficient gravity, may constitute sexual harassment. *See Campbell v.*

---

**9.** Although not the basis for any of the violations found against Dr. McClellan, the record is replete with other examples of Dr. McClellan's harassing conduct toward the female students.

On one occasion as he tried to enter the EKG room being held shut by Ms. White, he described himself as "like a madman from a monster movie" trying to get in.

*Kansas State University,* 780 F.Supp. 755 (D.Kan.1991).

In this case conflicting testimony was presented. Issues of credibility and weight were resolved against Dr. McClellan at every level. Our review is limited to determining whether the findings are supported by substantial and material evidence. *Southern Ry. Co. v. State Bd. of Equalization,* 682 S.W.2d 196 (Tenn.1984). We are not at liberty to reevaluate the evidence or substitute our judgment for that of the factfinder. *Humana of Tenn. v. Tennessee Health Facilities Comm'n,* 551 S.W.2d 664 (Tenn.1977). The evidence is sufficient to establish a violation of the Board policies prohibiting sexual harassment and unprofessional conduct.

As noted by the learned Chancellor: "[t]he appropriate remedy is peculiarly within the discretion of the [agency]. . . ." Having found grounds to affirm the procedures employed, facts found, and conclusions reached, we will not interfere with the sanctions imposed upon Dr. McClellan. We remand for the appropriate imposition of those sanctions and tax the costs of this appeal to Dr. McClellan.

ANDERSON, C.J., and DROWOTA, REID and BIRCH, JJ., concur.