IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 16, 2010 Session

## JOSEPH EDWARD RICH, M.D. v. TENNESSEE BOARD OF MEDICAL EXAMINERS

**Appeal from the Chancery Court for Davidson County**
**No. 08-229-II     Carol McCoy, Chancellor**

**No. M2009-00813-COA-R3-CV - Filed September 14, 2010**

This is an administrative appeal arising from the suspension of a doctor's medical license by the Tennessee Board of Medical Examiners. The appellant's medical license was suspended by the Board following its finding that he violated four provisions of the Tennessee Medical Practice Act, three state regulations, and one provision of the United States Code. The violations related to his use of chelation therapy and intravenous hydrogen peroxide therapy, and his use of methadone to treat patients. Following the Board's decision, the appellant filed a petition for judicial review before the chancery court. The chancery court affirmed the decision of the Board. The appellant raises numerous issues on appeal, *inter alia*, that the Board's decision was arbitrary and capricious and that the Board's decision was not supported by substantial and material evidence. We reverse the finding that Dr. Rich was in violation of subsections (1), (4) and (12) of Tenn. Code Ann. § 63-6-214(b) because the Board did not articulate the applicable standard of care, as required by Tenn. Code Ann. § 63-6-214(g), to demonstrate his violations of that standard. We affirm the chancery court on all other issues including the findings that Dr. Rich violated of subsection (14) of Tenn. Code Ann. § 63-6-214(b), Tenn. Comp. R. & Regs. 0880-2-.14(6)(c), Tenn. Comp. R. & Regs. § 0880-2-.14(6)(e)(3)(ii) and 21 U.S.C.A § 823(g)(1). Due to our reversal of the Board's finding on three of the seven charges against Dr. Rich, we remand this action for the reconsideration of the sanctions against him.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part, and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Jeffrey B. Levens, Chicago, Illinois, and James C. Bradshaw III, Nashville, Tennessee, for the appellant, Joseph Edward Rich, M.D.

Robert E. Cooper, Jr., Attorney General and Reporter, and Sara E. Sedgwick, Senior Counsel, for the appellee, Tennessee Board of Medical Examiners.

## OPINION

Dr. Joseph Edward Rich received his medical degree from the University of Saarland, Germany and holds a Masters of Public Health degree from the University of Michigan and a Masters of Medical Management degree from Tulane University. Prior to obtaining a medical license in Tennessee, Dr. Rich obtained a license to practice medicine in the states of Oregon, Michigan, California, Kansas, Indiana, and Kentucky.

In August 1995, Dr. Rich was granted a conditional medical license to practice medicine in Tennessee. Dr. Rich then opened a medical office in Knoxville, Tennessee, under the name Center for Environmental and Integrative Medicine. By 2002, Dr. Rich's medical practice included chelation and hydrogen peroxide therapies. Additionally, Dr. Rich treated patients for "opioid dependency" using methadone.

On June 15, 2005, the Division of Health Related Boards of the Tennessee Department of Health (hereinafter "the Department") filed a Notice of Charges against Dr. Rich.[1] The Notice of Charges was amended twice. In the final amendment, filed on July 13, 2007, Dr. Rich was alleged to have provided chelation therapy and intravenous hydrogen peroxide therapy to patients without appropriate diagnosis or medical documentation. The Department also alleged that Dr. Rich used methadone in violation of statutes and regulations because (1) his use of methadone was not supported by the appropriate medical records and (2) he used methadone to "detoxify" patients yet he was not licensed to use methadone for that purpose. The Notice of Charges additionally set forth numerous facts pertaining to these and other charges.

In the final amended Notice of Charges, Dr. Rich was alleged to have violated the following provisions of the Tennessee Medical Practice Act, Tenn. Code Ann. § 63-6-101, *et seq.*:

(1) "[u]nprofessional, dishonorable or unethical conduct" pursuant to Tenn. Code Ann. § 63-6-214(b)(1);

(2) "[g]ross malpractice, or a pattern of continued or repeated malpractice, ignorance, negligence or incompetence in the course of medical practice"

---

[1]Dr. Rich had previously been disciplined by the Board of Medical Examiners in 1999 and placed on probation for two years.

pursuant to Tenn. Code Ann. § 63-6-214(b)(4);

(3) "dispensing, prescribing or otherwise distributing any controlled substance or any other drug not in the course of professional practice, or not in good faith to relieve pain and suffering, or not to cure an ailment, physical infirmity, or disease, or in amounts and/or for durations not medically necessary, advisable or justified for a diagnosed condition" pursuant to Tenn. Code Ann. § 63-6-214(b)(12);

(4) "dispensing, prescribing or otherwise distributing any controlled substance or other drug to any person in violation of any law of the state or of the United States" pursuant to Tenn. Code Ann. § 63-6-214(b)(14).

The Department also alleged that Dr. Rich's use of controlled substances, specifically methadone, was in violation of the following state regulations and federal statute:

(5) Tenn. Comp. R. & Reg. 0880-2-.14(6)(c);
(6) Tenn. Comp. R. & Reg. 0880-2-.14(6)(e)(3)(ii); and
(7) 21 U.S.C.A § 823(g)(1).

A contested case hearing was tried on ten separate days over a period of eighteen months, from July 26, 2006 to December 6, 2007. At the conclusion of the final day of the hearing, December 6, 2007, the Board found Dr. Rich in violation of all four provisions of the Tennessee Medical Practice Act, specifically Tenn. Code Ann. § 63-6-214(b)(1), (4), (12) and (14), two state regulations, specifically Tenn. Comp. R. & Reg. 0880-2-.14(6)(c) and (6)(e)(3)(ii), and one provision of the United States Code, 21 U.S.C.A § 823(g)(1).

Based upon the above findings, and after considering his previous violations and sanctions, the Board suspended Dr. Rich's medical license for one year. The suspension was subject to the following conditions: that Dr. Rich obtain an evaluation from the Vanderbilt Comprehensive Assessment Program for Professions ("VCAP"), that Dr. Rich authorize VCAP to send its recommendations to the Board, that Dr. Rich comply with the VCAP recommendations, that he complete a comprehensive course in pain management, that he pay the costs of the prosecution, and that he personally appear before the Board at the conclusion of his one-year suspension to determine if a probationary period was necessary. The Board also required that Dr. Rich transfer all of his patients to other medical providers prior to the start of his suspension. At the conclusion of the final hearing on December 6, Dr. Rich's

counsel notified the Board that he was withdrawing as Dr. Rich's counsel.[2] A final order was entered on December 21, 2007.

Dr. Rich obtained substitute counsel in January 2008 and on February 13, 2008, Dr. Rich filed a petition for judicial review of the Board's final order asserting a plethora of reasons to overturn the Board's action.[3] He contended, *inter alia*, that the Board's findings were not supported by substantial and material evidence, that evidence was erroneously excluded, that the applicable standards of care were not established, and that the Board's decision was arbitrary and capricious, an abuse of discretion, beyond the Board's authority, and/or in violation of the law. On March 17, 2009, the chancery court issued a thorough and detailed Memorandum Opinion affirming the decision of the Board. This appeal followed.

## ISSUES

Dr. Rich raises numerous issues on appeal, many of which are interrelated. He contends, *inter alia*, that the expert testimony presented by the Department is inadequate and improper, that the Department failed to satisfy the locality rule regarding the standard of care for chelation therapy, and that the Board's decision is not supported by substantial and material evidence. He also contends that the Board's findings were arbitrary and capricious, and characterized by abuses of discretion and procedural flaws that deprived him of due process. Additionally, Dr. Rich argues that his counsel was ineffective warranting a reversal of the Board's findings and that he was prejudiced by the bias of the chancellor. We will dispose of the last two issues first and then discuss the other issues in turn.

## ANALYSIS

### A.
### INEFFECTIVE ASSISTANCE OF COUNSEL

Dr. Rich contends throughout his brief that he was deprived of his due process right to a fair hearing because his counsel during the contested case hearing was ineffective. We find this issue without merit because there is no constitutional guarantee to effective counsel in civil cases. *See Thornburgh v. Thornburgh*, 937 S.W.2d 925, 926 (Tenn. Ct. App. 1996). Moreover, Dr. Rich has failed to establish a legal or factual basis to support his argument. Therefore, we affirm the Chancellor's ruling on this issue.

---

[2]Dr. Rich did not attend the final hearing on December 6, 2007; he was on vacation.

[3]Dr. Rich also filed several petitions to stay the suspension of his medical license, all of which the chancery court denied.

B.

ALLEGATION THE CHANCELLOR WAS BIASED AGAINST DR. RICH

Dr. Rich contends the chancellor was biased against him. This contention is based on two circumstances: (1) the chancellor denied his request for a stay of the judgment in chancery court; and (2) the chancellor refused to recuse herself in a separate action that Dr. Rich brought pursuant to Tenn. Code Ann. § 63-1-117(a)(3)(A). We find no merit to Dr. Rich's contention of bias in fact and in law.

As a matter of law, the mere fact that a trial judge rules adversely to a party is not a sufficient ground to establish bias. *Keisling v. Keisling*, 92 S.W.3d 374, 380 (Tenn. 2002). As a matter of fact, we find nothing in the record that supports Dr. Rich's conclusory contention of bias. We also note that Dr. Rich has waived this issue because he never asked the chancellor to recuse herself from this action.

C.

EXCLUSION OF EVIDENCE

Dr. Rich contends the administrative judge erred in excluding witnesses and exhibits he intended to present in the contested case hearing. The administrative judge excluded the evidence at issue upon a finding that Dr. Rich failed to comply with a scheduling order requiring the disclosure of witnesses and exhibits by a certain date.

The scheduling order required the parties to disclose their witnesses and exhibits to be introduced at the hearing by April 24, 2006. The first day of the protracted contested case hearing was July 26, 2006. Dr. Rich did not file his witness or exhibit list until December 20, 2006. The administrative judge then set a second deadline for disclosure of witnesses and exhibits, that of December 27, 2006; however, Dr. Rich again failed to comply with the deadline and filed his disclosure on January 3, 2007. Although Dr. Rich admits he did not conform to the scheduling orders mandated by the administrative judge, he insists he should have been allowed to present the evidence that was excluded to avoid "injustice."

The pertinent statute, Tenn. Code Ann. § 4-5-313(3), provides that the administrative judge "*may* admit affidavits not submitted in accordance with this section where necessary to prevent injustice." (emphasis added). The statute expressly affords the administrative judge the discretion to admit or exclude evidence by use of the word "*may*." The chancery court affirmed the decision to exclude the evidence and found the administrative judge's decision was reasonably based on Dr. Rich's "continued failure to comply with procedural deadlines" set in the contested case hearing. We agree and find the administrative judge did not abuse his discretion in excluding the evidence at issue.

-5-

## D.
### ADMISSION OF EVIDENCE

Dr. Rich challenges the decision of the administrative judge to allow the Department to present evidence when it also failed to conform to the first scheduling order and failed to comply with Tenn. R. Civ. P. 26 in the disclosure of its expert witnesses. We find this issue without merit for three reasons. First, although the Department submitted its list of witnesses and exhibits late, after the date set by the first scheduling order, unlike Dr. Rich, the Department submitted its list prior to the start of the contested case hearing. Second, Dr. Rich did not object to the Department's failure to comply with Tenn. R. Civ. P. 26 during the contested case hearing. Third, he failed to raise this issue in his petition for review before the chancery court. Accordingly, Dr. Rich waived the issue. *McClellan v. Bd.of Regents of State University*, 921 S.W.2d 684, 690 (Tenn. 1996); *see also Barnhill v. Barnhill*, 826 S.W.2d 443, 458 (Tenn. Ct. App. 1991) (holding that an appellate court will not address issues raised for the first time on appeal).

Next, Dr. Rich asserts the administrative judge erred by admitting certain patient medical records into evidence. He contends this was error because the Department obtained the records without consent of the patient as required by Tenn. Code Ann. § 63-1-117. We also find no merit to this issue for three reasons. First, Dr. Rich waived this issue by failing to object to the admission at the contested case hearing. *McClellan*, 921 S.W.2d at 690. Second, we find his objection disingenuous because the records were introduced into the record as stipulated evidence by the parties. Third, the statute in effect at the time of the hearing, Tenn. Code Ann. § 63-1-117(a)(3)(A) (2007), provided that failing to file a petition objecting to a records request waives any challenge to the reasonableness of the request.

## E.
### PROCEDURAL ERRORS

For his procedural challenges, Dr. Rich asserts that he did not receive fair notice of the charges against him. This is based on the fact that the final (third) Notice of Charges was submitted after the close of the contested case hearing. He also asserts that the administrative judge erred by allowing a redacted version of the notice of charges to be submitted to the Board, which erroneously revealed information pertaining to previous charges unrelated to those at issue here. He states the redacted document presented to the Board was inadequate because it merely had lines drawn through the objectionable material and the objectionable information was legible. Dr. Rich insists there should have been a "clean" notice of charges submitted to the Board, one that did not reveal prior charges unrelated to this case.

We have determined that Dr. Rich had fair notice of the charges against him prior to

the hearing. This is because the charges asserted in the first two notices did not differ in any significant respect from the final notice of charges. As for the redacted notice of charges presented to the Board, Dr. Rich failed to object when the redacted version was introduced into evidence. Moreover, the administrative judge provided a curative instruction to the Board stating that Dr. Rich's disciplinary history could only be considered for determining appropriate sanctions if and in the event the Board found Dr. Rich in violation of any of the statutes or regulations at issue.

A clean redacted notice of charges should have been presented to the Board when it considered whether Dr. Rich was in violation of any of the regulations or statutes, however, we are unable to conclude that the redacted copy presented to the Board affected the merits of the Board's decision. "No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision." Tenn. Code Ann. § 4-5-322(i). The chancery court concluded that the "Board's receipt of an un-redacted version of the Notice of Charges did not affect the merits of its decision on the 2005 charges" and we agree with that conclusion. Additionally, Dr. Rich's prior disciplinary action was appropriate for consideration of sanctions following the finding that he was in violation of the charged statutes and regulations. *See Robertson v. Tenn. Bd. of Social Worker Certification and Licensure*, 227 S.W.3d 7, 15 (Tenn. Ct. App. 2007).

F.
STANDARD OF CARE

Dr. Rich contends the Board's findings that he violated subsections (1), (4), (12) and (14) of Tenn. Code Ann. § 63-6-214(b) should be reversed because the Board failed to articulate the applicable standards of care he allegedly violated.[4] Conversely, the Department contends the Board was excused from articulating the standard of care because expert proof concerning the standard of care was presented.

We have determined the Board is not excused from articulating the applicable standard of care merely because expert proof concerning the standard of care was presented. Further, the Board is not excused from articulating the applicable standard of care merely because Dr. Rich was found to have violated a regulation unless the regulation expressly provides that a violation of the regulation shall be prima facie evidence of a violation of the

---

[4]Dr. Rich also contends on appeal that the Department failed to prove the applicable standard of care; however, he did not raise this specific argument before the chancery court. Dr. Rich did contend that the Board's decision was arbitrary and capricious and not supported by substantial and material evidence, which are issues we address later in this opinion.

statute at issue. The reasoning behind our determinations is explained below.

Tenn. Code Ann. § 63-6-214(g)

At issue is the fact that the Board found Dr. Rich in violation of subsections (1), (4), (12) and (14) of Tenn. Code Ann. § 63-6-214(b) without articulating the applicable standards of care.[5] We have determined the Board's failure to comply with subsection (g) of Tenn. Code Ann. § 63-6-214, by failing to articulate the applicable standards of care, constitutes reversible error as it pertains to the findings Dr. Rich violated subsection (1), (4) and (12).

Tenn. Code Ann. § 63-6-214(g) reads in pertinent part:

> *For purposes of actions taken pursuant to subdivisions (b)(4), (12) and . . . any other subsection in which the standard of care is an issue*, any Tennessee licensed physician serving as a board member, hearing officer, designee, arbitrator or mediator is entitled to rely upon that person's own expertise in making determinations concerning the standard of care and is not subject to voir dire concerning such expertise. *Expert testimony is not necessary to establish the standard of care.* The standard of care for such actions is a statewide standard of minimal competency and practice that does not depend upon expert testimony for its establishment. *However, to sustain actions based upon a violation of this standard of care, the board must, in the absence of admissions or other testimony by any respondent or such respondent's agent to the effect that the standard was violated, articulate what the standard of care is in its deliberations*. The provisions of title 29, chapter 26, and specifically § 29-26-115, concerning the locality rule, do not apply to actions taken pursuant to this chapter.

Therefore, subsection (g) expressly requires the Board to articulate the standard of care relative to the alleged violations of subdivisions (b)(4) and (12), and any other subsection in which the standard of care is an issue unless the respondent makes an admission of the violation of the applicable standard of care. *See* Tenn. Code Ann. § 63-6-

---

[5]The underlying conduct relating to the charges against Dr. Rich for violating Tenn. Code Ann. § 63-6-214(b)(1), (4), and (12) stemmed from two separate areas of his practice: the practice of chelation therapy and hydrogen peroxide therapy to treat heavy metal toxicity, and the use of methadone in treating patients for pain management. The Board did not articulate a statewide standard of care applicable to the diagnosis of heavy metal toxicity and treatment when it found Dr. Rich in violation of Tenn. Code Ann. § 63-6-214(b)(1), (4), and (12), and the Board did not articulate a standard of care applicable for prescribing methadone for the purpose of "treating" patients when it found Dr. Rich in violation of Tenn. Code Ann. § 63-6-214(b)(1), (4), and (12).

214(g).[6] There is another circumstance by which the Board may be excused from the requirement to articulate the standard of care, that is when a regulation upon which the statutory violation is alleged establishes the applicable standard of care. *See Siddall v. Tenn. Bd. of Medical Examiners*, No. M2004-02767-COA-R3-CV, 2006 WL 1763665, at *3 (Tenn. Ct. App. June 27, 2006).

Thus, the Board is expressly required to articulate the applicable standard of care when the respondent is alleged to have violated subsections (4) and (12) of Tenn. Code Ann. § 63-6-214(b) unless the respondent admits the violation or the respondent is found to have violated a regulation which establishes that he also violated the statute. Dr. Rich did not admit violating either subsection, he was not found to have violated a regulation that established the applicable standard of care,[7] and the Board did not articulate the standard of care applicable to either subsection. Therefore, unless another exception to the mandatory provision of subsection (g) applies, the findings that he violated subsections (4) and (12) of Tenn. Code Ann. § 63-6-214(b) must be reversed.

The Department contends the Board was excused from articulating the standard of care because expert testimony was presented. We find no merit to this contention. This is because the plain language of the statute expressly requires the Board to articulate the applicable standard(s) of care. As we determined in *Siddall v. Tenn. Bd. of Medical Examiners*, No. M2004-02767-COA-R3-CV, 2006 WL 1763665, at *3 (Tenn. Ct. App. June 27, 2006), although the Department *may* present expert testimony, "it still must articulate a standard of care to establish a statewide standard of minimum competency and practice." This is because the "plain, unambiguous language" of subsection (g) requires the Board to articulate the standard of care in the absence of an admission of a violation. *Id*. Thus, the introduction of expert medical proof in this case does not excuse the Department of its affirmative duty to articulate the applicable standards of care relative to subsections (4) and (12) of Tenn. Code Ann. § 63-6-214(b).

---

[6]As the statute expressly states, if subsection (g) applies, the Board is required to articulate the standard of care relative to the alleged violations unless the respondent, in this case Dr. Rich, makes an admission of the violation of the applicable standard(s) of care. *See* Tenn. Code Ann. § 63-6-214(g). There is nothing in the record to indicate that Dr. Rich or his agent (attorney) made any admissions that the standard was violated, nor does the Department cite to any portion of the record in which such admissions occurred, thus, this exception does not apply to the facts of this case.

[7]The regulation in *Siddall* stated that a violation of the regulation constituted "a prima facie violation of T.C.A. § 63-6-214(b)(1), (4), and (12)." *Sidall*, 2006 WL 1763665, at *3-4 (citing Tenn. Comp. R. & Regs. 0880-2-.14(7)). The regulations at issue in this action, while stating that the Board may use them as guidelines for determining whether a physician's conduct violates Tenn. Code Ann. § 63-6-214(b)(12)-(14), do not state that a violation is a prima facie violation of the statute. Therefore we find them distinguishable. *See* Tenn. Comp. R. & Regs. 0880-2-.14(6)(e).

Dr. Rich was also charged with violating subsections (1) and (14) of Tenn. Code Ann. § 63-6-214(b). Unlike subsections (4) and (12), Tenn. Code Ann. § 63-6-214(g) does not expressly require the Board to "articulate" the standard of care as it pertains to subsections (1) and (14). However, the Board is required to articulate the standard of care if the standard of care "is an issue." *See* Tenn. Code Ann. § 63-6-214(g) (stating the duty to articulate the standard of care applies "*for purposes of actions taken pursuant to subdivisions* [of Tenn. Code Ann. § 63-6-214(b)] . . . *in which the standard of care is an issue*"). Thus, if the standard of care is an issue relative to subsections (1) or (14), the Board has a duty to articulate the applicable standard of care unless Dr. Rich admitted the violation or the relevant standard of care is stated in a regulation. *See* Tenn. Code Ann. § 63-6-214(g); *Siddall*, 2006 WL 1763665, at *3.

SUBSECTION (1)

Dr. Rich was alleged to have violated subsection (1) of Tenn. Code Ann. § 63-6-214(b) by engaging in "[u]nprofessional, dishonorable or unethical conduct." Determining whether a physician engaged in unprofessional, dishonorable or unethical conduct requires an understanding of the relevant standard(s) of care. *See Tenn. Dept. of Health v. Frisbee*, No. 01A01-95-11-CH-00540, 1998 WL 4718, at *4 n.8 (Tenn. Ct. App. Jan. 8, 1998). Dr. Rich did not admit violating the applicable standard(s) of care and he was not found to have violated a regulation that states the applicable standard(s) of care. Thus, the Board was required to, but did not, articulate the standard(s) of care from which he deviated to be in violation of subsection (1) of Tenn. Code Ann. § 63-6-214(b). Accordingly, the finding Dr. Rich violated of Tenn. Code Ann. § 63-6-214(b)(1) must be reversed.

SUBSECTION (14)

The Department also alleged that Dr. Rich violated subsection (14) of Tenn. Code Ann. § 63-6-214(b) by "dispensing, prescribing or otherwise distributing any controlled substance or other drug to any person in violation of any law of the state or of the United States." Like subsection (1), subsection (14) is not listed as one of the subsections for which the Board shall articulate the applicable standard of care; nevertheless, the Board may be required to articulate the standard of care if the standard of care "is an issue." *See* Tenn. Code Ann. § 63-6-214(g). We have determined that, unlike subsection (1), it was not necessary for the Board to articulate a standard of care with respect to subsection (14); this is because a standard of care is not at issue. *See Frisbee*, 1998 WL 4718, at *4 n.6. Dr. Rich was alleged to have violated subsection (14) of Tenn. Code Ann. § 63-214(b) by "illegally dispensing or prescribing controlled substances," which is "specific inappropriate conduct" that does not require evidence of a specific standard of care or professional practice standard. *See id*.

## G.
### SUBSTANTIAL AND MATERIAL EVIDENCE

Dr. Rich contends the Board's decision was not supported by substantial and material evidence. To constitute "substantial and material evidence," the evidence "must be such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999) (citing *Pace v. Garbage Disposal Dist.*, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965)). Substantial and material evidence under Tenn. Code Ann. § 4-5-322(h) is understood to require "something less than a preponderance of the evidence, . . . but more than a scintilla or glimmer." *Gluck* 15 S.W.3d at 490 (quoting *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)).

In determining the substantiality of the evidence, the reviewing court "shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Tenn. Code Ann. § 4-5-322(h)(5)(B); *see also Jackson Mobilphone,* 876 S.W.2d 106, 110 (Tenn. Ct. App. 1993). The court may reverse or modify the decision of the agency if the petitioner's rights have been prejudiced because the administrative findings, inferences, conclusions or decisions are "[u]nsupported by evidence which is both substantial and material in the light of the entire record." Tenn. Code Ann. § 4-5-322(h)(5)(A). However, when reviewing an administrative agency's decision, a court may not substitute its judgment concerning the weight of the evidence for that of the Board as to questions of fact. Tenn. Code Ann. § 4-5-322(h)(5)(B); *see Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002); *see also Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 668 (Tenn. 1977) (holding the trial court and the appellate court must review these matters pursuant to the narrow statutory criteria). Moreover, courts generally defer to decisions of administrative agencies when those agencies are acting within their area of specialized knowledge, experience, and expertise." *Williamette Indus., Inc. v. Tenn. Assessment Appeals Comm'n*, 11 S.W.3d 142, 146 (Tenn. Ct. App. 1999) (quoting *Wayne County*, 756 S.W.2d at 279). With the above standard of review in mind, we turn to the remaining provisions to determine if there is substantial and material evidence in the record to support the Board's findings.

The Board found that Dr. Rich was in violation of 21 U.S.C.A § 823(g)(1) and Tenn. Code Ann. § 63-6-214(b)(14) for illegally dispensing controlled substances. The Board found Dr. Rich in violation of 21 U.S.C.A § 823(g)(1) for dispensing narcotic drugs for maintenance treatment or detoxification programs without a separate registration. The Board also found Dr. Rich in violation of Tenn. Code Ann. § 63-6-214(b)(14) for "dispensing,

prescribing or otherwise distributing [a] controlled substance or other drug to any person in violation of any law of the state or of the United States."

As the trial court correctly noted, 21 U.S.C.A § 823(g)(1) prohibits a physician from dispensing narcotic drugs for maintenance treatment or detoxification programs without a separate registration. The evidence established that Dr. Rich did not have such a registration. Moreover, although Dr. Rich maintains that his use of methadone was for a program of "weaning and tapering," patient records and documents from Dr. Rich's practice established to the satisfaction of the Board that his program was for "detoxification" or for treating patients for "chronic pain," not weaning or tapering. It is not the role of the court to substitute its judgment as it pertains to the weight of the evidence concerning questions of fact. *Allison*, 284 S.W.3d at 323. That is the role of the administrative agency. *Id*. Deferring to the Board's determination concerning the weight of the evidence, we find there is substantial and material evidence for the Board's decision that Dr. Rich violated 21 U.S.C.A § 823(g)(1) and Tenn. Code Ann. § 63-6-214(b)(14).

The Board also found Dr. Rich in violation of Tenn. Comp. R. & Regs. 0880-2-.14(6)(c) and Tenn. Comp. R. & Regs. 0880-2-.14(6)(e)(3)(ii). Tenn. Comp. R. & Regs. 0880-2.14(6)(c) provides that:

> If a physician provides medical care for persons with intractable pain, with or without the use of opiate medications, to the extent that those patients become the focus of the physician's practice the physician must be prepared to document specialized medical education in pain management sufficient to bring the physician within the current standard of care in that field which shall include education on the causes, different and recommended modalities for treatment, chemical dependency and the psycho/social aspects of severe, chronic intractable pain.

The Department provided records of twelve patients to whom Dr. Rich had prescribed methadone. The Board found eleven of these patients' records indicated a diagnosis of "chronic pain" along with methadone addiction and there is no evidence that Dr. Rich had "specialized medical education in pain management." This evidence, which we find to be substantial and material, supports the Board's finding that Dr. Rich violated Tenn. Comp. R. & Regs. 0880-2.14(6)(c).

Lastly, the Board found Dr. Rich in violation of Tenn. Comp. R. & Regs. 0880-2-.14(6)(e)(3)(ii), which provides that:

> Prescribing, ordering, administering, or dispensing dangerous drugs or

controlled substances for pain will be considered to be for a legitimate medical purpose if based upon accepted scientific knowledge of the treatment of pain, including intractable pain, not in contravention of applicable state or federal law, and if prescribed, ordered, administered or dispensed in compliance with the following guidelines where appropriate and as is necessary to meet the individual need of the patient:

> (ii) Pursuant to a written treatment plan tailored for the individual needs of the patient by which treatment progress and success can be evaluated with stated objectives such as pain relief and/or improved physical and psychosocial function. Such a written treatment plan shall consider pertinent medical history and physical examination as well as the need for further testing, consultations, referrals or use of other treatment modalities;

The Board found that the patient records of the twelve patients to whom Dr. Rich had prescribed methadone demonstrated that Dr. Rich had failed to comply with this regulation. There is substantial and material evidence in the record to support the Board's finding that Dr. Rich violated Tenn. Comp. R. & Regs. 0880-2-.14(6)(e)(3)(ii).

In conclusion, we have determined the decisions of the Board finding Dr. Rich in violation of Tenn. Code Ann. § 63-6-214(b)(14), Tenn. Comp. R. & Regs. 0880-2-.14(6)(c), Tenn. Comp. R. & Regs. 0880-2-.14(6)(e)(3)(ii), and 21 U.S.C.A § 823(g)(1) are supported by substantial and material evidence.

## H.
### SANCTIONS IMPOSED BY BOARD

Administrative agencies have "peculiar discretion" over sanctions to be imposed, *McClellan*, 921 S.W.2d at 693, and our review of an agency's sanctions is subject to "very limited judicial review." *Armstrong v. Metropolitan Nashville Hospital Authority*, No. M2004-01361-COA-R3-CV, 2006 WL 1547863, at *3 (Tenn. Ct. App. June 6, 2006) (citing *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185-86 (1973); *Woodard v. United States*, 725 F.2d 1072, 1077 (6th Cir.1984); *McClellan*, 921 S.W.2d at 693). The sanctions imposed upon Dr. Rich were based on the Board's findings that Dr. Rich had violated four provisions of the Tennessee Medical Practice Act, specifically Tenn. Code Ann. § 63-6-214(b)(1), (4), (12) and (14), two state regulations, specifically Tenn. Comp. R. & Reg. 0880-2-.14(6)(c) and (6)(e)(3)(ii), and one provision of the United States Code, 21 U.S.C.A § 823(g)(1). We have affirmed four of the seven violations found by the Board and the four violations we affirmed appear to be very serious, especially in light of Dr. Rich's previous

violations. Nevertheless, we believe it appropriate to afford the Board the opportunity to reconsider what sanctions are appropriate in light of our decision to reverse three of the seven violations found by the Board.

## IN CONCLUSION

We reverse the Board's findings that Dr. Rich violated Tenn. Code Ann. § 63-6-214(b)(1), (4), and (12); we affirm the Board's findings that Dr. Rich violated Tenn. Code Ann. § 63-6-214(b)(14), Tenn. Comp. R. & Regs. 0880-2-.14(6)(c), Tenn. Comp. R. & Regs. 0880-2-.14(6)(e)(3)(ii), and 21 U.S.C.A § 823(g); and remand the issue of sanctions for the Board's reconsideration. This matter is remanded with costs of appeal assessed against the Appellant, Joseph Edward Rich, M.D.

_____
FRANK G. CLEMENT, JR., JUDGE