IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 27, 2011 Session

KEVIN COX, D.V.M.
v.
TENNESSEE BOARD OF VETERINARY MEDICAL EXAMINERS

Direct Appeal from the Chancery Court for Davidson County
No. 07-1154-I      Claudia Bonnyman, Chancellor

No. M2010-01582-COA-R3-CV - Filed October 21, 2011

This is an appeal from an administrative decision against Appellant, a licensed veterinarian.
Appellee Board of Veterinary Medical Examiners sanctioned Appellant for improperly
prescribing medications to farms. Appellant appeals. Discerning no error, we affirm.

Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J.,
and HOLLY M. KIRBY, J., joined.

Richard L. Colbert and Courtney L. Wilbert, Franklin, Tennessee, for the appellant, Kevin
H. Cox. D.V.M.

Robert E. Cooper, Jr., Attorney General and Reporter; and Sara E. Sedgwick, Senior
Counsel, for appellee, Tennessee Board of Veterinary Medical Examiners.

OPINION

I. Background

Petitioner/Appellant Kevin Cox, D.V.M. (Dr. Cox) is a large animal veterinarian
licensed to practice in Tennessee. Respondent/Appellee, the Board of Veterinary Medical
Examiners ("the Board") is a regulatory board operating within the Division of Health
Related Boards of the Tennessee Department of Health. The Board is responsible for the
regulation and supervision of the practice of veterinary medicine throughout Tennessee.

Dr. Cox lives in western Tennessee and works as the staff veterinarian for Tennessee

Farmer's Cooperative ("the Cooperative").[1] In February 2005, in response to the needs of member-farmers, the Cooperative decided to expand its veterinary services and, toward that end, created a separate, wholly-owned subsidiary, Co-Op Vet Health Inc. ("Co-Op Vet Health"). Dr. Cox was the president and the sole veterinarian of the new company and the charges at issue in this appeal stem from his work with Co-Op Vet Health, rather than the Cooperative.

In his work with Co-Op Vet Health, Dr. Cox has some 187 patients/clients ranging from far western Tennessee to extreme eastern Tennessee. According to Dr. Cox, he provides his Co-Op Vet Health clients with advice and information regarding over-the-counter and prescription medications, as well as animal health. However, Dr. Cox does not provide emergency services to his clients, and recommends that they keep an emergency veterinarian on call. Through his services with Co-Op Vet Health, Dr. Cox also gives his clients a printed list of common medications that he might prescribe, including their prices.

After operating Co-Op Vet Health for a few months, on March 25, 2005, Dr. Cox received complaints from unidentified persons, indicating that he was operating his practice in an unethical manner. Dr. Cox subsequently wrote to the Board to determine whether he was operating within the confines of the law. An agent for the Board wrote back to Dr. Cox, pointing out several relevant rules and regulations concerning his practice, and informing him that the Board could only determine the propriety of his practice should he petition for a Declaratory Order. Dr. Cox never petitioned for a Declaratory Order and continued to operate Co-Op Vet Health without any significant changes.

On November 3, 2005, only nine months after forming Co-Op Vet Health, the Board issued a Notice of Charges and Memorandum of Assessment of Civil Penalties and Costs against Dr. Cox alleging six violations of the rules and laws governing veterinarians. The Notice alleged that Dr. Cox visited a particular farm in May 2005 and made arrangements to provide prescription medications to the farmer without examining any of the animals on the farm, and that this incident evidences a practice to prescribe medications without forming a proper veterinarian-client-patient relationship.

It eventually came to light that the charges against Dr. Cox were filed by another veterinarian, Dr. Oscar Wilson (Dr. Wilson). These charges concerned Dr. Cox's conduct at Beatyview Farm, which is owned by Julius Beaty. According to Dr. Wilson, he learned, through Mr. Beaty's sons, that Dr. Cox had gone to the Beaty farm and had prescribed medications for the animals without examining any animals or the herd and without taking

---

[1]The Cooperative, which is owned collectively by some 70,000 farmers throughout the state, is headquartered in La Vergne, Tennessee and provides services to members across the state.

other steps to create a proper veterinarian-patient-client relationship.

Prior to the hearing on the charges, Dr. Wilson sought to withdraw his complaint against Dr. Cox; nevertheless, the Board continued with the proceedings against Dr. Cox. On June 23, 2006, the State sought to compel Dr. Cox to provide the State with twenty-one of Dr. Cox's client-patient records. After first agreeing to provide the State access to eleven client-patient records, Dr. Cox later objected based on the fact that Dr. Wilson had withdrawn his complaint regarding Beatyview Farm and that Dr. Cox was not charged with record-keeping violations in the Notice of Charges. The State renewed its motion to compel discovery on August 1, 2006. On August 8, 2006, the Administrative Law Judge ("ALJ") ordered Dr. Cox to produce twenty-one client-patient records stating that;

> The [State] has shown that the client files at issue here are "relevant to the subject matter involved in the pending action." . . . Since [Dr. Cox] has been charged with a practice of inappropriate prescribing, not simply with one incident of so doing, his prescribing habits (as indicated in client files) are clearly relevant. Although the request of the initial complainant, that his action be withdrawn, may have implications for the State's ability to prove its case at the hearing, it does not serve to modify the charges contained in the Notice, or to restrict the State's ability to discover materials relevant to the pending action.

The ALJ held a contested hearing on January 30–31, 2007. During the proceedings, the ALJ directed the Board as follows:

> Just as—and I was going to talk about this later but—just as any record keeping requirements—we've heard testimony here today that there may have been record keeping violations. Again, that is outside the scope of this hearing.
>
> And so any violations in that regard or on other regards, other violations that may be listed in the rules, would not be appropriate to consider in your decision and whether or not discipline was proper this time. Is that clear?

Dr. Wilson first testified regarding his original complaint. Dr. Wilson stated that he was led to believe that Dr. Cox went to the Beaty farm and prescribed certain medications without examining any of the animals. Dr. Wilson also testified that, in a phone call that Dr. Wilson made to Dr. Cox, Dr. Cox indicated that the only thing he would need to prescribe

medications to Dr. Wilson was an address.[2] However, Dr. Wilson explained that, after learning that Mr. Beaty signed an affidavit stating that Dr. Cox had examined the herd prior to prescribing the medications, Dr. Wilson sought to withdraw his complaint.

Mr. Beaty did not testify; instead, his testimony was introduced through an affidavit.[3] In the affidavit, he stated that Dr. Cox did examine his herd prior to prescribing any medications and that he was never led to believe that medications were readily available. This examination, however, was of the herd, and, according to Dr. Cox, did not include Dr. Cox laying hands on any of the Beatys' animals. Mr. Charles Whitson, an investigator employed by the Board, also testified that Dr. Cox informed him that he could prescribe medications for an entire year based on one annual visit to the farm, though other witnesses and Dr. Cox's records tend to show that he often made follow-up visits approximately every six months.

Dr. Cox testified that he always forms the proper veterinarian-client-patient relationship prior to prescribing medications. Producers who used Dr. Cox's veterinary services testified that Dr. Cox did not prescribe medications without speaking at length with the persons who would administer the drugs. They also testified that compared to other large animal veterinarians, Dr. Cox was even more reticent about prescribing medications. Betty Woods, a long-time client of Dr. Cox's, testified that Dr. Cox came to her farm prior to prescribing medications, looked over her herd, and physically examined a number of animals. Amy Maness, one of Dr. Cox's clients, testified that Dr. Cox was readily available

_____

[2] There is some disagreement as to whether Dr. Wilson identified himself at the beginning of the phone call. What is clear is that Dr. Wilson described certain fictitious symptoms on a dairy cow to Dr. Cox, asking for prescription medications to be sent to him. Once Dr. Wilson identified himself by providing the address of his veterinary clinic, Dr. Cox refused to prescribe or send the medications to Dr. Wilson. A heated argument over the standard of care in veterinary practice ensued and Dr. Cox never sent the requested medications to Dr. Wilson's clinic.

[3] Affidavits are admissible evidence in administrative proceedings, so long as the opposing party does not timely object. Tennessee Code Annotated Section §4-5-313 provides:

> At any time not less than ten (10) days prior to a hearing or a continued hearing, any party shall deliver to the opposing party a copy of any affidavit such party proposes to introduce in evidence, together with a notice in the form provided in subdivision (4). Unless the opposing party, within seven (7) days after delivery, delivers to the proponent a request to cross-examine an affiant, the opposing party's right to cross-examination of such affiant is waived and the affidavit, if introduced in evidence, shall be given the same effect as if the affiant had testified orally.

The State did not object to the admission of Mr. Beaty's affidavit.

for follow-up care, would come out to her farm if needed, and physically examined her sick animals on three occasions.[4] However, she did admit that Dr. Cox prescribed some medications for her sick animals without ever examining those animals. Another client, Victor Yoder, testified that, throughout his professional relationship with Dr. Cox, Dr. Cox had never once physically examined any of his animals as none were ever in need of medication treatment; however, Mr. Yoder did call another veterinarian five times a year to do routine testing on his herd.[5] Nonetheless, Dr. Cox did prescribe medications for certain ongoing herd maintenance issues without having examined any of Mr. Yoder's animals himself.

The State called several practicing veterinarians who testified that, in their expert opinions, Dr. Cox did not establish a proper veterinarian-client-patient relationship prior to prescribing medications to his farm clients. These witnesses' opinions were formed after they examined Dr. Cox's patient records. Specifically, the experts were concerned by the fact that Dr. Cox: (1) handed out the price list to clients, which implied that medications could be obtained with just a phone call; (2) often had no notation in his records of ever having examined animals or herds prior to prescribing medications; (3) sometimes prescribed medications prior to visiting farms; (4) was unavailable for the required follow-up and emergency care needed when prescribing pharmaceuticals due to the vast territory of his practice; (5) had notations in his records indicating that prescriptions could be refilled as needed; and (6) failed to follow the recommendations of the American Veterinary Medical Association ("AVMA"), a voluntary membership association.[6] According to the State's experts, Dr. Cox's practice of prescribing medications without ever having physically examined any animals fell below the standard of care in Tennessee. The experts never spoke with Dr. Cox regarding his practice; instead their opinions focused on Dr. Cox's records. The experts did admit that, if additional information existed establishing a valid veterinarian-client-patient relationship, their opinions might be different.

Dr. Cox presented his own expert, who agreed that the notations in Dr. Cox's records

---

[4] Although Ms. Maness said that there were "at least" three visits, she did not testify specifically as to any other visits. The three times that Dr. Cox came to Amy Maness's farm are reflected in his records.

[5] Dr. Cox's records indicated that he had been to the Yoder farm on three occasions; Mr. Yoder was unable to say that there were any more visits than those reflected in the records, though he did testify that there were numerous phone calls.

[6] The recommendations produced by the AMVA require only voluntary compliance; as such, Dr. Cox is not charged with any violations of the AMVA guidelines; however, even Dr. Cox admitted that the all veterinarians should try to abide by the ethical guidelines contained therein and the Board considered the guidelines in determining whether Dr. Cox had engaged in unethical conduct.

were not sufficient to show a proper veterinarian-patient-client relationship.[7] Instead, the expert relied on Dr. Cox's own explanation of his care and treatment in each of the cases. Only after hearing Dr. Cox's explanation did the expert conclude that Dr. Cox had formed a proper veterinarian-patient-client relationship.

At the conclusion of proof on January 31, 2007, the Board found that Dr. Cox violated all six of the rules and regulations he had been charged with violating. On March 29, 2007, the Board entered a final order memorializing the earlier findings. The order included the required findings of fact, conclusions of law and policy reasons behind the decision, and generally incorporated the factual allegations as set out in the Notice of Charges.[8] Based on the violations, the Board placed Dr. Cox on probation for three years, with a requirement that so long as Dr. Cox continues to provide veterinary services through Co-Op Vet Health during the probationary period, he appear before the Board annually with a number of his veterinary records for the Board to review.[9] Finding that these violations were knowing and willful, the Board also imposed Type A sanctions, fining Dr. Cox $1,000.00 per violation, totaling $6,000.00.[10] Further, the Board ordered Dr. Cox to pay the costs of the contested case before

---

[7]The expert testified that poor record keeping is a hallmark of large animal veterinary practice and that the expert keeps similarly incomplete records himself, at times.

[8]Administrative boards are required to enter findings of fact, conclusions of law, and the policy reasons for the decision. *See* Tenn. Code Ann. §4-5-314 ("A final order . . . shall include conclusions of law, the policy reasons therefor, and findings of fact for all aspects of the order, including the remedy prescribed . . . .").

[9] The Board included the requirement that Dr. Cox bring records from only Co-Op Vet Health because in his statement before the Board imposed sanctions, Dr. Cox stated that he would not be operating Co-Op Vet Health any longer. Accordingly, the Board did not wish to impose restrictions on Dr. Cox that would prevent him from going into private practice.

[10] The Board was entitled to impose a variety of sanctions on Dr. Cox for his violations, including revocation of license, suspension, probation, private or public reprimand, and civil penalties. *See* Tenn. Comp. R. & Regs. 1730-01-.15(1). The amount of civil penalties imposed depends upon culpability. The regulation provides, in pertinent part:

Schedule of Civil Penalties

1. A Type A civil penalty may be imposed whenever the Board finds the person who is required to be licensed or certified by the Board is guilty of a willful and knowing violation of the Practice Act, or regulations pursuant thereto, to such an extent that there is, or is likely to be an imminent substantial threat to the health, safety and welfare of an individual client or the public. For purposes of this section, a type A penalty shall include, but not be limited to, a person who willfully and knowingly is or was practicing as a veterinarian

(continued...)

-6-

the Board, including investigatory costs.

On May 22, 2007 Dr. Cox filed a petition for judicial review in Chancery Court.[11]  On June 14, 2010, after several motions related to the costs of the administrative proceedings, which are not the subject of the present appeal, the Chancery Court entered its final order affirming the Board's decision in its entirety.

Dr. Cox properly appealed to this Court.[12]

## II. Issues Presented

Dr. Cox raises the following issues for review:

1. Was the Board's finding that Appellant failed to maintain a proper veterinarian-client-patient relationship supported by evidence that was substantial and material in light of the entire record?
2. Was the Board's decision arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion?

## III. Standard of Review

---

[10](...continued)
without a license from the Board.

\* \* \*

(c) Amount of Civil Penalties

1. Type A civil penalties shall be assessed in the amount of not less than $500 nor more than $1,000.

Tenn. Comp. R. & Regs. 1730-01-.15(5)(b).

[11] Decisions by administrative boards are appealed first to Chancery Court, then to the Tennessee Court of Appeals. *See* Tenn. Code Ann. §4-5-322 ("Proceedings for review are instituted by filing a petition for review in the chancery court of Davidson County, unless another court is specified by statute.").

[12] Both Appellant Kevin Cox and Appellee Board of Veterinary Medical Examiners filed briefs in this case. On August 23, 2011, the Tennessee Veterinary Medical Association sought leave from this Court to file a brief *amicus curiae. See* Tenn. R. App. P. 31(a) (stating that an amicus brief "may be filed only by leave of court granted on motion or at the request of the appellate court"). After due consideration, this Court denied that request *per curium* by order of September 16, 2011.

This is a case seeking to overturn the final decision in a contested case proceeding under the Uniform Administrative Procedures Act; accordingly, the standard of review is determined by statute. Specifically, the statute provides, in pertinent part:

> The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> * * *
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
>
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.
>
> (i) No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.

Tenn. Code Ann. §4-5-322.

This Court discussed the standards of review for Tenn. Code Ann. §4-5-322(h)(4) and (5) with specificity in *Jackson Mobilphone Co., Inc. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 110–11 (Tenn. Ct. App. 1993), as follows:

> The standards of review in Tenn. Code Ann. § 4-5-322(h)(4) and Tenn. Code Ann. § 4-5-322(h)(5) are narrower than the standard of review normally applicable to other civil cases. They are also related but are not synonymous. Agency decisions not supported by substantial and material evidence are arbitrary and capricious. However, agency decisions with adequate evidentiary support may still be arbitrary and capricious if caused by a clear error in judgment.
>
> A reviewing court should not apply Tenn. Code Ann. § 4-5-322(h)(4)'s "arbitrary and capricious" standard of review mechanically. In its broadest sense, the standard requires the court to determine whether the administrative

agency has made a clear error in judgment. An arbitrary decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.

Likewise, a reviewing court should not apply Tenn. Code Ann. § 4-5-322(h)(5)'s "substantial and material evidence" test mechanically. Instead, the court should review the record carefully to determine whether the administrative agency's decision is supported by "such relevant evidence as a rational mind might accept to support a rational conclusion." The court need not reweigh the evidence, and the agency's decision need not be supported by a preponderance of the evidence. The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed.

*Jackson Mobilphone*, 876 S.W.2d at 110–11 (citations omitted).

## IV. Analysis

*1. The Board's Decision was not based on substantial and material evidence.*

Dr. Cox's first argument is that the Board's decision was not based on evidence that was substantial and material in light of the entire record. An agency's decision is supported by substantial and material evidence even if the evidence could support another conclusion. *See Hughes v. Bd. of Comm'rs*, 319 S.W.2d 481, 484 (Tenn 1958); *Estate of Street v. State Bd. of Equalization*, 812 S.W.2d 583, 585 (Tenn. Ct. App. 1990). This standard requires less than a preponderance of evidence but more than a "'scintilla or glimmer' of relevant evidence." *MobileComm of Tennessee, Inc. v. Tennessee Public Service Comm'n*, 876 S.W.2d 101, 104 (Tenn. Ct. App. 1993) (quoting *Estate of Street v. State Bd. of Equalization*, 812 S.W.2d 583, 585–86 (Tenn. Ct. App.1990)).

As a preliminary matter, we note that the board members were not entitled to determine whether Dr. Cox violated the laws and rules governing veterinary practice based solely on their own experience and expertise, despite the fact that many Board members are veterinarians. "Findings of fact shall be based exclusively upon the evidence of record in the adjudicative proceeding and on matters officially noticed in that proceeding. The agency member's experience, technical competence and specialized knowledge may be utilized in the evaluation of evidence." Tenn. Code Ann. §4-5-314(d). Expert testimony is a valid and important form of evidence in administrative proceedings charging a violation of a

professional standard of care, and as such the Board is entitled to rely on such evidence.[13] *See Big Fork Min. Co. v. Tennessee Water Quality Control Bd.*, 1981, 620 S.W.2d 515 ("Opinions of qualified experts constitutes valid evidence and may support decision of administrative tribunal.").

In support of his argument that the decision was not supported by substantial and material evidence, Dr. Cox contends that the Board erroneously based its decision solely on his veterinary records. Dr. Cox bases his argument on the fact that the ALJ directed the Board that any record-keeping violations should not be considered in determining whether Dr. Cox was guilty of violating the rules and regulations set out in the Notice of Charges. This argument is without merit. The ALJ advised the Board that they could not consider record-keeping violations in determining whether to sanction Dr. Cox, but did not go so far as to state that the Board could not consider the records. The guiding standard for the admission of evidence in administrative proceedings is included in Tennessee Code Annotated Section 4-5-313. The statute states:

In contested cases:

(1) The agency shall admit and give probative effect to evidence admissible in a court, and when necessary to ascertain facts not reasonably susceptible to proof under the rules of court, evidence not admissible thereunder may be admitted if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. The agency shall give effect to the rules of privilege recognized by law and to agency statutes protecting the confidentiality of certain records, and shall exclude evidence which in its judgment is irrelevant, immaterial or unduly repetitious; . . .

Tenn. Code Ann. §4-5-313. Dr. Cox makes no argument that the disputed evidence would not be admissible in a court, only that the ALJ directed the Board to disregard the record-

---

[13] While expert testimony is admissible, the Veterinary Practice Act of Tennessee does not expressly require expert testimony to establish the standard of care. *See* Tenn. Code Ann. 63-12-124. Even in proceedings before the Board of Medical Examiners, which polices physicians, expert testimony is not required. *See* Tenn. Code Ann. §63-6-214(g) ("Expert testimony is not necessary to establish the standard of care."). In the recent case of Rich v. Tennessee Board of Medical Examiners, No. M2009–00813–SC–R11–CD, 2011 WL 4717363 (Tenn. Oct. 10, 2011), the Tennessee Supreme Count concluded that the Board was required to articulate the standard of care for physicians during deliberations when the standard of care was at issue with regard to a violation of Tennessee Code Annotated Section 63-6-214(b). *Id.* at *5. The Tennessee Veterinary Practice Act does not contain a similar requirement. *See* Tenn. Code Ann. 63-12-124. Accordingly, the Board in this case was not required to expressly articulate the particular standard of care before deciding that Dr. Cox violated the statute.

-10-

keeping violations. The ALJ, however, allowed the evidence to be admitted and did not direct the Board to completely disregard the records, only any record-keeping violations that might be evident. The evidence is relevant and material, and as such was properly considered by the Board.

Turning to each of the six violations, we conclude that the evidence was material and substantial and affirm the Board's decision.[14]

## A. Count I

Dr. Cox's first violation concerns prescribing medications. The relevant regulation states:

> Prerequisites to Prescribing, Selling, Distributing or Dispensing Animal Drugs Required by Federal Law to be Prescribed or Ordered by a Licensed Veterinarian to Laypersons - In Person, Electronically, and Over the Internet

---

[14]We note that the six laws and rules that Dr. Cox is charged with violating all involve the same conduct on the part of Dr. Cox and substantially overlap in their requirements. The Board is at liberty to sanction veterinarians for any and all violations of the law governing veterinarians. The relevant regulation states, in pertinent part:

> Upon a finding by the Board that a veterinarian and/or premises owner has violated any provision of the Tennessee Veterinary Medical Practice Act (T.C.A. §§63-12-101, *et seq.*) or the rules promulgated thereto, the Board may impose any of the following actions separately or in any combination deemed appropriate to the offense.

Tenn. Comp. R. & Regs. 1730-01-.15(2).

When an individual is at risk of being punished more than once for the same conduct, the Double Jeopardy Clause of the United States Constitution is at issue. *See* U.S. Const. amend. V ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . ."). Double Jeopardy may apply in administrative proceedings when the purpose of the sanction is punitive rather than remedial. *See* Cutshall v. Sundquist, 193 F.3d 466, 473 (6th Cir. 1999) (citing Hudson v. United States, 522 U.S. 93, 118 S.Ct. 488, 493 (1997)) (holding that Double Jeopardy may only apply in administrative proceedings when "the statutory scheme was so punitive either in purpose or effect . . . as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty"). Dr. Cox, however, did not argue in his brief that he could not be charged with violating all six laws and regulations in violation of the Double Jeopardy Clause. Accordingly, this Court is not at liberty to determine if the Board was in error in finding six separate violations of the intersecting laws and regulations with regard to the Double Jeopardy Clause, only whether there was sufficient evidence to support the violations and whether the decision was neither arbitrary nor capricious.

-11-

\* \* \*

(b) Except as provided in subparagraphs (c), it shall be a prima facie violation of T.C.A. § 63-12-124 (a) (12), (13) and (28) for a veterinarian to prescribe, sell, distribute or dispense to a layperson any animal drug required by federal law to be prescribed or ordered by a licensed veterinarian whether in person or by electronic means or over the Internet or over telephone lines, unless the veterinarian, pursuant to appropriate protocols or veterinary orders, has first done and appropriately documented, for the animal, herd, or flock on whose behalf a prescription is to be issued or prescription drugs dispensed, all of the following:

1. Performed an appropriate history and physical examination; and
2. Made a diagnosis based upon the history, physical examination, and pertinent diagnostic and laboratory tests.
3. Formulated a therapeutic plan, and discussed it with the animal's owner/agent or guardian, along with the basis for it and the risks and benefits of various treatments options, a part of which might be a prescription drug; and
4. Insured availability of the veterinarian or the veterinarian's staff for appropriate follow-up care.

Tenn. Comp. R. & Regs. 1730-01-.02(3).

The Board relied on the fact that, in a majority of Dr. Cox's records there was no indication that Dr. Cox had ever physically examined any animals prior to prescribing medications. Indeed, many of Dr. Cox's own witnesses confirmed that Dr. Cox would prescribe medications for an animal without first examining it, or, in some cases, any animals on the farm at all. Based on this evidence, we conclude that there was material and substantial evidence to support the Board's finding with regard to this violation.

## B. Counts II, III, & IV

The Board found that Dr. Cox was also in violation of the Tennessee Veterinary Practice Act of 1967. The act states, in pertinent part:

The board, pursuant to the procedure prescribed in this section, has the power to deny, suspend or revoke any license or to otherwise discipline an applicant or licensee who is found guilty by the board of one (1) or more of the following:

-12-

* * *

(12) Unprofessional or unethical conduct or engaging in practices in connection with the practice of veterinary medicine that are in violation of the standards of professional conduct as defined in this section or prescribed by the rules of the board;

(13) Conduct reflecting unfavorably upon the profession of veterinary medicine;

* * *

(28) Dispensing, prescribing or otherwise distributing any controlled substance or any other drug not in the course of the accepted practice of veterinary medicine.

Tenn. Code Ann. § 63-12-124(a) (2011).

The Board found that Dr. Cox's practice of prescribing medications to farms without physically examining any animals on the farm constituted three violations of the Act, under sections (12), (13), and (28); according to the Board, the practice was unethical, reflected unfavorably on the profession of veterinary medicine, and was not in the course of accepted veterinary practice. Given that Tennessee Rule and Regulation 1730-01-.02(3)(b) provides that a violation of the regulation requiring physical examination, as discussed above, will also " be a prima facie violation of T.C.A. § 63-12-124 (a) (12), (13) and (28)," we conclude that there was reasonably sound factual evidence to support the three violations of this statute.

## C. Count V

The Board also found that Dr. Cox violated Tennessee Rule and Regulation 1730-01-.13, which provides that "Unprofessional conduct shall include but not be limited to the following: . . . (13) [a]ny violation of T.C.A. §63-12-124." Because we conclude that the Board was justified in finding the three violations of Tennessee Code Annotated Section 63-12-124, we affirm the Board's decision with regard to this violation as well.

## D. Count VI

Finally, the Board found that Dr. Cox violated the regulation that governed distribution of prescription medications. The regulation provides, in pertinent part:

Distribution of Veterinary Prescription Drugs.

(a) Distribution of veterinary prescription drugs to laymen may occur only on the prescription or other order of a licensed veterinarian. The prescriptions must be issued in the course of his or her professional practice, with a veterinarian-client-patient relationship existing.
(b) A proper veterinarian-client-patient relationship is defined as existing when:

1. The veterinarian has assumed responsibility for making medical judgments regarding the health of the animal(s) and the need for medical treatment, and the client (owner or other caretaker) has agreed to follow the instructions of the veterinarian; and when
2. There is sufficient knowledge of the animal(s) by the veterinarian to initiate at least a general or preliminary diagnosis of the medical condition of the animal(s). This means that the veterinarian has recently seen and is personally acquainted with the keeping and care of the animal(s) by virtue of an examination of the animal(s), and/or by medically appropriate and timely visits to the premises where the animal(s) is (are) kept; and when
3. The veterinarian is routinely and physically available for follow-up in case of adverse reactions or failure of the treatment or regimen or therapy, or has arranged for substitute follow-up care.

Tenn. Comp. R. & Regs. 1730-01-.21(2).

The Board concluded that Dr. Cox did not form the appropriate veterinarian-client-patient relationship because his failure to examine any animals or to make appropriate and timely visits to his clients meant that he did not have "sufficient knowledge of the animal(s) . . . to initiate at least a general or preliminary diagnosis of the medical condition of the animal(s)" and that he was unavailable for the appropriate follow-up care due to the vast territory of his practice.

Dr. Cox argues, however, that the Board's requirement that he physically examine the animals and provide follow-up care more than bi-annually is without support in the regulation, and as such, to quote Dr. Cox's brief, "hold[s] Dr. Cox to a more 'ideal' standard than what is in the Rule." Dr. Cox relies on the recent Tennessee Court of Appeals case of *Cady v. Tenn. Bd. Of Veterinary Med. Exam'rs*, No. M2008-02551-COA-R3-CV, 2009 WL 2707398 (Tenn. Ct. App. Aug. 27, 2009), to support this assertion. In *Cady*, we held that the Board cannot adopt rules that "constitute[] an impermissible expansion of the Legislature's

definition of the practice of veterinary medicine and the Board's authority"[15] Here, the Board has not impermissibly expanded its authority in hearing expert testimony regarding the veterinarian-client-patient relationship. Tennessee Rule and Regulation 1730-01-.21(2) requires that the veterinarian have a "sufficient knowledge of the animal[s]," but does not explain what actions are required for a veterinarian to gain that knowledge. In cases where the standard of care is undefined or ambiguous, expert testimony may be needed, and the Board is entitled to rely on that testimony. Administrative Law and Practice explains:

> A fundamental concept of administrative law is that the agency encompass special expertise in the relevant subject matter. One of the reasons for assigning adjudication to an agency is to take advantage of expert factfinding. Thus the evaluation of expert evidence is an especially important function.
>
> The agency factfinder often must choose between conflicting experts. The Seventh Circuit summarized its views: "In the case of dueling doctors, it remains the province of the hearing officer to decide whom to believe . . . ."

2 Admin. L. & Prac. § 5:64 (3d ed.) (quoting *Dray v. Railroad Retirement Bd.*, 10 F.3d 1306, 1311 (7th Cir. 1993)); *see* 2 Admin. L. & Prac. § 5:53 (3d ed.) ("A large portion of the testimony in administrative hearings comes from experts or quasi-experts (persons who are giving opinions worth more than a layman's)."); *see also* *Big Fork Min. Co. v. Tennessee Water Quality Control Bd.*, 1981, 620 S.W.2d 515 ("Opinions of qualified experts constitutes valid evidence and may support decision of administrative tribunal.").

Experts from the State testified that Dr. Cox's practice of looking over a herd, without examining the animals, was not enough to gain a sufficient knowledge of the animals in order to prescribe medications. Even though Dr. Cox's expert testified that examining animals was

---

[15] We note that *Cady* involved a different rule governing veterinary medicine, Tennessee Rule and Regulation 1730-01-.02(1), which Dr. Cox was also charged with violating*, supra*. In fact, the *Cady* decision invalidated portions of that rule on August 27, 2009, finding that the "scope of the practice of veterinary medicine" was over-broad and contradicted the definition of veterinary medicine contained in Tennessee Code Annotated Section 63-12-103. *See Cady,* 2009 WL 2707398, at *7. The facts in *Cady* involved a lay person charged with acting as a veterinarian without a license for performing artificial inseminations on horses. *Id.* at *1. Dr. Cox does not argue in his brief that the *Cady* decision means that Tennessee Rule and Regulation 1730-01-.02(3) is invalid as it applies to him, nor do we conclude so. The *Cady* decision invalidating Tennessee Rule and Regulation 1730-01-.02(1) was filed after the Board's decision in the present case and Dr. Cox is a licensed veterinarian obviously performing services within the scope of the practice of veterinary medicine. Therefore, as a threshold matter, Dr. Cox was properly charged with a violation of Tennessee Rule and Regulation 1730-01-.02(3).

not always required, he did state that he would prescribe without an examination only if he was very familiar with the farm and that the level of involvement Dr. Cox had with his patients, as reflected in his records, was below the standard of care. Indeed, in our review of Dr. Cox's records and the testimony of Dr. Cox's clients, we conclude that, in general, the level of actual involvement (not merely phone conversations) reflected in the records is substantially similar to the level of involvement testified to by the witnesses. Therefore, we conclude that there was sufficient evidence to support the Board's decision with regard to this violation.

## 2. The Board's decision was arbitrary or capricious

Dr. Cox also argues that the decision of the Board was arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion. An agency's decision is arbitrary or capricious if it lacks any rational basis. *See MobileComm of Tennessee, Inc. v. Tennessee Public Service Comm'n*, 876 S.W.2d 101, 104 (Tenn. Ct. App. 1993) (citing *Pace Co., Div. of AMBAC I., Inc. v. Dept. of Army*, 344 F.Supp. 787, 790 (W.Dist. Tenn. 1971)).

Dr. Cox first argues that he was not provided sufficient notice in the Notice of Charges that he could be sanctioned for violations that did not concern Beatyview Farm. "In context of administrative hearing process, basic due process requires notice reasonably calculated under all circumstances to apprise interested parties of claims of opposing parties." *McClellan v. Board of Regents of State University*, 921 S.W.2d 684, 688 (Tenn. 1996) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). "The purpose of due process requirements is to notify the individual in advance in order to allow adequate preparation and reduce surprise." *McClellan*, 921 S.W.2d 688 (citing *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1562–63, 56 L.Ed.2d 30 (1978).

Here, the Notice of Charges specifically states that it concerns both Dr Cox's "regular activities" in prescribing medications and his actions in "the course of his employment." Therefore, he was on notice that the charges concerned his practice as a whole rather than simply the complaint regarding Beatyview Farm. While the Notice of Charges did state that it pertained to Dr. Cox's ongoing activities for the Cooperative, rather than Co-Op Vet Health, Co-Op Vet Health is a subsidiary of the Cooperative and the allegations in the Notice gave Dr. Cox adequate notice that he would need to prepare a defense for his regular prescribing activities. Indeed, Dr. Cox's records had been the subject of a prior motion to compel by the State. At that time, Dr. Cox argued that the records were not relevant because the original complaint against him had been withdrawn and the Notice of Charges only notified him that he needed to defend the allegations concerning Beatyview Farm. Nearly six

months prior to the hearing, however, the ALJ permitted the discovery of the records, ruling that the records were evidence of his alleged ongoing inappropriate practices, as detailed in the Notice of Charges. Therefore, Dr. Cox was clearly on notice that his records and his ongoing inappropriate prescribing practice were at issue in the contested hearing. As this error did not affect Dr. Cox's ability to prepare his defense and did not affect the merits of the case, we will not reverse the decision of the Board. *See* Tenn. Code Ann. §4-5-322 ("No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.").

Dr. Cox also argues that the Board's reliance on his records was error as the Notice of Charges did not allege any record-keeping violations. However, the very regulations that Dr. Cox is charged with violating in the Notice of Charges contain requirements that place Dr. Cox's records at issue. *See* Tenn. Comp. R. & Regs. 1730-01-.02(3) (directing the Board to consider whether a physical examination was "first done *and appropriately documented*" in order to determine whether medications were appropriately prescribed) (emphasis added). Therefore, the Board had a rational basis for concluding that the Notice of Charges informed Dr. Cox that his records could be considered relevant evidence of the charges.

Dr. Cox next argues that the Board's large animal veterinarians were biased against him because they are competitors. This argument is likewise without merit. Tennessee Code Annotated Section 4-5-302(b) states that "[a]ny party may petition for the disqualification of an administrative judge, hearing officer or agency member promptly after receipt of notice indicating that the individual will serve or, if later, promptly upon discovering facts establishing grounds for disqualification." *See also* **McClellan v. Board of Regents of State University**, 921 S.W.2d 684, 688 (Tenn. 1996) ("Allowing parties to acquiesce in the procedures, but to challenge those same procedures on appeal is inefficient and unreasonable."). Dr. Cox does not argue that he has received any new information concerning the large animal veterinarians on the Board or that he was unaware prior to the contested hearing that some of the members were large animal veterinarians. Indeed, Dr. Cox did seek to have two members of the Board disqualified,[16] but did not seek any action from the large animal veterinarians that he is now arguing are biased. Accordingly, this argument is untimely.

Even if this argument had been properly introduced in the agency proceedings, Dr. Cox failed to present any evidence that the large animal veterinarians were biased in this case other than the broad allegation that they are competitors with Dr. Cox. More than base allegations are needed to overcome the presumption that board members perform their duties

---

[16] The two Board members whom Dr. Cox sought to disqualify recused themselves prior to the contested hearing.

in good faith. *See **Martin v. Sizemore***, 78 S.W.3d 249, 266 (Tenn. Ct. App. 2001) ("Unless the person challenging a board member for bias comes forward with evidence of bias of this sort, the courts will presume that the challenged board member, like other public officials, will perform his or her duty in good faith and in the manner prescribed by law."); *cf.* ***Ogrodowczyk v. Tennessee Bd. for Licensing Health Care Facilities***, 886 S.W.2d 246, 251 (Tenn. Ct. App. 1994) (Cantrell, J., concurring) (finding the fact that the Board relied on expert witnesses who were competitors of the sanctioned individual was not sufficient to invalidate the Board's decision).

Dr. Cox finally argues that there was insufficient proof that Dr. Cox's violations were knowing and deliberate as required in order to impose Type A sanctions. "Because the appropriate remedy is peculiarly within the discretion of the agency, we will only review whether the remedy is 'unwarranted in law' or 'without justification in fact.'" ***Byrd v. Tennessee Bd. of Chiropractic Examiners***, No. M2010–01473–COA–R3–CV, 2011 WL 3558166, at \*9 (Tenn. Ct. App. Aug. 11, 2011) (quoting ***Robertson v. Tenn. Bd. of Social Worker Certification & Licensure***, 227 S.W.3d 7, 13–14 (Tenn. 2007)). The Board is entitled to impose Type A sanctions when the violation is knowing and deliberate or when there "is likely to be an imminent substantial threat to the health, safety and welfare of an individual client or the public." Tenn. Comp. R. & Regs. 1730-01-.15(5)(b). Some of the board members expressed grave concerns over the possibility of over-prescribing certain medications in dairy cattle, which could affect public health and welfare. In addition, Dr. Cox had previously been concerned about whether his practice was operating within the confines of the law, as others had made complaints to him that he was operating in an unethical manner. After writing to the Board concerning his practice, the Board replied that he could seek a declaratory order, which Dr. Cox failed to do. Therefore, evidence shows that Dr. Cox was aware of the law and deliberately continued to operate his practice even after others expressed their concerns as to its propriety. Accordingly, we conclude that the Board's decision to impose Type A sanctions was warranted in law and justified in fact.

### V. Conclusion

The decisions of the Board of Veterinary Medical Examiners and the Chancery Court are affirmed and this cause is remanded for the appropriate imposition of sanctions. Costs of this appeal are taxed to Appellant, Kevin Cox D.V.M., and his surety.

_____
J. STEVEN STAFFORD, JUDGE