IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 13, 2018 Session

## PAUL ZACHARY MOSS v. SHELBY COUNTY CIVIL SERVICE MERIT BOARD

**Appeal from the Chancery Court for Shelby County**
**No. CH-15-1669     JoeDae L. Jenkins, Chancellor**

_____

### No. W2017-01813-COA-R3-CV
_____

Appellant was previously terminated from his employment with the Shelby County Fire Department. After the Shelby County Civil Service Merit Board upheld Appellant's termination, judicial review followed in the Shelby County Chancery Court, which affirmed the Merit Board's decision. In his appeal to this Court, Appellant contends that the decision upholding his termination should be reversed due to a violation of his due process rights. We agree and reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Andrew C. Clarke, Memphis, Tennessee and Eric H. Espey, Germantown, Tennessee, for the appellant, Paul Zachary Moss.

John B. Turner, Jr., Memphis, Tennessee, for the appellee, Shelby County Civil Service Merit Board.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

This case stems from an altercation that occurred on November 1, 2013. On that date, the appellant, Paul Zachary Moss ("Mr. Moss"), was at home and off duty from his employment with the Shelby County Fire Department. While Mr. Moss was at home, his wife was attending a "political rally" at an interstate overpass on Quince Road in Memphis. The rally consisted of, among other things, participants holding a banner

calling for the impeachment of President Obama. When the rally engendered some negative feedback from passing motorists, participants began to become concerned for their safety. The Memphis Police Department was called for assistance, and as is relevant herein, Mr. Moss was contacted by his wife, who requested that he come to the rally.

When Mr. Moss arrived at the rally, he learned that one of the participants had been wearing an "Obama mask." This angered him,[1] and he inquired who had been wearing the mask. Mason Ezell ("Mr. Ezell"), one of the rally participants, then informed Mr. Moss that he had been wearing the mask. Following this admission, a charged scene materialized among Mr. Moss, Mr. Ezell, and another rally participant, Earl Mayfield ("Mr. Mayfield"). The scene culminated in a physical confrontation. Mr. Mayfield tackled Mr. Moss to the ground and placed him into a headlock, after which Mr. Moss drew a handgun and pointed it at both Mr. Mayfield and Mr. Ezell. According to Mr. Moss's later testimony, he drew his gun because he felt like he was in "imminent danger." Although Mr. Moss was placed under arrest when the Memphis Police Department arrived at the scene, Mr. Mayfield and Mr. Ezell signed forms at the Shelby County Criminal Justice Center later that night declining to prosecute Mr. Moss. Mr. Moss subsequently informed the Fire Department about the incident that transpired at the rally.

Notwithstanding their previous declinations, approximately a week after the rally, Mr. Ezell and Mr. Mayfield requested that Mr. Moss be prosecuted. Mr. Moss was then charged with aggravated assault, to which he maintained his innocence. Ultimately, Mr. Moss entered an "Alford" guilty plea[2] and was placed on judicial diversion for three years in February 2015.

This legal resolution aside, Mr. Moss soon faced potential repercussions from his employer. In a "*Loudermill* notice" dated March 2, 2015, Mr. Moss was informed that he was subject to major disciplinary action, "up to and including termination." The letter, sent from Deputy Chief Dale Burress, notified Mr. Moss of two specific charges: (1) that he had been convicted of a felony and (2) that he had failed to provide notification of his arrest. A *Loudermill* hearing was subsequently held on March 30, 2015, and the following day, on March 31, 2015, Fire Chief Alvin Benson advised Mr. Moss by letter that he was terminated from his employment.

Mr. Moss appealed his termination to the Shelby County Civil Service Merit Board ("the Board"), which later held a hearing on October 20, 2015. Following the

---

[1] Mr. Moss later testified that he perceived the mask as racist and thus that its use had put his wife in danger.

[2] "An *Alford* plea, also known as a best interest plea, allows a criminal defendant to plead guilty while asserting his or her innocence." *In re Anna B.*, No. M2016-00694-COA-R3-PT, 2017 WL 436510, at *4 n.3 (Tenn. Ct. App. Feb. 1, 2017) (citing *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970)).

hearing, the Board entered a written decision upholding the termination. The Board's written decision indicated that the same charges identified in the *Loudermill* notice were applicable, namely: (1) that he had been convicted of a felony and (2) that he had failed to provide notification of his arrest, but in its "Findings," the Board made findings that were not responsive to these charges. Indeed, rather than state that Mr. Moss was being terminated for a felony conviction stemming from the political rally or from an alleged failure to notify the Fire Department of his arrest from that incident, the Board upheld the termination on grounds that Mr. Moss had been "untruthful" in his *Loudermill* hearing and had generally "exhibited conduct unbecoming of a Shelby County Firefighter or Shelby County employee while off duty," acts for which he was not charged at either the *Loudermill* stage of the proceeding or by the Board. According to the Board, "[r]egardless of whether Mr. Moss received a Judicial Diversion relating to the incident of November 1, 2013 in which he pulled a weapon on two elderly men, the fact is that the incident occurred and is an egregious violation of the General Rules of Conduct." The Board concluded that Mr. Moss's conduct "reflected adversely on all firefighters."

In the wake of the Board's decision, Mr. Moss timely sought judicial review in the Shelby County Chancery Court. In his petition appealing the decision of the Board, Mr. Moss contended that the Board violated his procedural due process rights in a number of respects during the October 20, 2015 hearing. He also submitted that the termination of his employment was "arbitrary, capricious, an abuse of discretion and not supported by substantial material evidence." According to Mr. Moss, he was not given "adequate notice of the charges against him in a manner that would allow him a fair opportunity to respond." Further, he observed that the "two charges asserted in the *Loudermill* notice were proven to be without factual basis as Chief Benson and Chief Burress both acknowledged that Mr. Moss gave notice of being taken to the Memphis Police Department on the night of the events and Mr. Moss had not been convicted of a felony." Mr. Moss concluded his petition by requesting reinstatement to his employment and compensation for his loss of salary and benefits. Eventually, in an order entered on August 10, 2017, the Chancery Court reached the conclusion that the Board's decision should be affirmed. This appeal followed.

## ISSUE PRESENTED

In his appellate brief, Mr. Moss frames the issue on appeal as follows: Whether the court below, in affirming the decision of the Shelby County Civil Service Merit Board . . . to uphold the termination of Mr. Moss's employment, erred in failing to reverse the Board's decision on the basis that it violated due process, was arbitrary and/or was unsupported by substantial and material evidence pursuant to T.C.A. § 4-5-322(h)(1), (4) or (5).

## STANDARD OF REVIEW

"Judicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under the Uniform Administrative Procedures Act, § 4-5-322." Tenn. Code Ann. § 27-9-114(b)(1). Consequently, Tennessee Code Annotated section 4-5-322(h) contains the standard of review applicable to the Board's decision herein.[3] That provision specifically provides as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).

## DISCUSSION

Mr. Moss has raised a number of contentions on appeal regarding why he believes the Board's decision must be reversed. In addition to asserting several evidentiary issues regarding the conduct of the hearing before the Board,[4] Mr. Moss maintains that his due process rights were violated because he was not given proper notice of the charges against him. We turn first to this latter concern, because as explained below, we find it to be dispositive of this appeal.

---

[3] The judicial review standards of the Uniform Administrative Procedures Act ("UAPA") apply even though the Shelby County Civil Service Merit Board is exempt from the UAPA's contested case hearing procedures. *See Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 263-64 (Tenn. 2009).

[4] Among other things, Mr. Moss complains that he was not allowed to offer evidence of a "lack of uniformity of discipline."

In his brief on appeal, Mr. Moss notes that the *Loudermill* notice sent to him apprised him of two charges: (1) that he had been convicted of a felony and (2) that he had failed to provide notification of his arrest. As to these matters in relation to the 2013 incident, Mr. Moss correctly maintains that the charges were not established. There does not appear to be any dispute that Mr. Moss advised the Fire Department about the incident stemming from the political rally, and although Fire Chief Benson stated that he considered Mr. Moss to be "in the category of being convicted of a felony" for his purposes, he conceded before the Board that such a proposition was legally incorrect. Indeed, with respect to this latter concern, it should be noted that because Mr. Moss was placed on judicial diversion following his *Alford* plea, there was no technical conviction. *See Rodriguez v. State*, 437 S.W.3d 450, 457 (Tenn. 2014) ("Although the judicial diversion statute has a component of guilt that could be characterized as a conviction in the general sense, the statute forecloses the entry of a judgment of conviction unless the defendant violates the terms of his diversion."). The factual insufficiency of these charges notwithstanding, the Board has sought to disclaim that the specific charges outlined in the *Loudermill* notice were the basis for Mr. Moss's termination. At oral argument, for instance, counsel for the Board stated that Mr. Moss was not terminated on account of a "conviction." Rather, the Board's position appears to be that, irrespective of a conviction, Mr. Moss's termination was justified on account of what occurred at the 2013 incident and other alleged bad acts that were uncovered in the Fire Department's investigation of it. Fire Chief Benson's termination letter, for example, referenced a number of incidents predating the 2013 political rally, and during his testimony before the Board, he stated that he refers to prior acts and uses them to evaluate the truthfulness of a current act in dispute.

The Board did not ultimately uphold Mr. Moss's termination on account of the specific charges that had been brought against him, but as alluded to before, it entered "Findings" referring generally to Mr. Moss's untruthfulness and characterizing his conduct as "unbecoming" of a Shelby County employee. The Board's findings in this regard were specifically as follows:

> After the testimony, reviewing the exhibits, the policies and procedures of the Shelby County Fire Department, the Civil Service Merit Board found that the Fire Department met the burden of proof for "cause" in the termination of Mr. Paul Zachary Moss. The Board found that Mr. Moss was untruthful in the Loudermill hearing and exhibited conduct unbecoming of a Shelby County Firefighter or Shelby County employee while off duty. Regardless of whether Mr. Moss received a Judicial Diversion relating to the incident of November 1, 2013 in which he pulled a weapon on two elderly men, the fact is that the incident occurred and is an egregious violation of the General Rules of Conduct. Mr. Moss' outrageous conduct reflected adversely on all firefighters.

The Board's conclusion appears to be that, notwithstanding the fact that Mr. Moss's placement on judicial diversion signified a technical absence of a felony conviction, his behavior in relation to the November 1, 2013 incident nonetheless warranted his termination. Although we certainly do not dispute that the Fire Department could have attempted to pursue disciplinary action against Mr. Moss on a broader basis than the charges that were specifically brought against him in his *Loudermill* notice, Mr. Moss is nevertheless entitled to due process. Indeed, as the Board acknowledges in its brief on appeal, under the Shelby County Civil Service Merit Act, classified county employees may be terminated only for just cause. *Case v. Shelby Cnty. Civil Service Merit Bd.*, 98 S.W.3d 167, 172 (Tenn. Ct. App. 2002) (citing 1971 Tenn. Priv. Acts. ch. 110 § 21). Such employees have a property interest in their continued employment which may not be deprived absent due process. *Id.* (citation omitted).

The question, of course, is what process was due to Mr. Moss. A fundamental element of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* (citation omitted). "Basic due process requires 'notice reasonably calculated under all the circumstances, to apprise interested parties' of the claims of the opposing parties." *McClellan v. Bd. of Regents of State Univ.*, 921 S.W.2d 684, 688 (Tenn. 1996) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

In this case, the Board's counsel conceded at oral argument that the *Loudermill* notice was defective, but he argued that its deficiencies were cured when the termination letter was sent. The termination letter, he noted, set out the conduct of the 2013 incident and Mr. Moss's alleged dishonesty in the *Loudermill* hearing as the bases for the termination. Thus, according to counsel, any shortcomings in notice were cured by the time of the hearing before the Board. The Board's argument, as articulated in its appellate brief, is that procedures employed at one stage of an employee's termination may mitigate deficiencies that exist at other stages. In essence, the specific argument here is that Mr. Moss had notice of the charges against him through the termination letter and therefore had the ability to refute the charges at the hearing before the Board.

There is no question that "[t]he pretermination and posttermination procedures are intertwined and must be reviewed together to determine whether due process has been satisfied." *See Case*, 98 S.W.3d at 173. However, a fundamental problem with the Board's argument exists in this case, because even if Mr. Moss could have, subsequent to receipt of his pre-termination *Loudermill* letter, been terminated on a different ground without violating his due process rights, the record is devoid of clarity that other charges, which form the exclusive basis of his termination by the Fire Department and affirmed by the Board, were ever specifically pursued against him with accompanying fair notice.

We note, for instance, that the charges identified in the *Loudermill* notice are the same charges specifically identified in the termination letter and the written decision of

the Board. Indeed, at the outset of the second page of the Board's written decision, for example, the Board lists the "Applicable Policy/Code Provisions" as being the same charges detailed in the initial *Loudermill* letter. Even if the Fire Department could have validly pursued discipline based on Mr. Moss's general conduct at the 2013 rally as opposed to specifically tying potential discipline to a conviction resulting from that conduct, we cannot fault Mr. Moss for preparing his defense with the understanding that the only specific charges he needed to refute were those in the *Loudermill* notice when both the termination letter and the Board's own decision list those charges—and no others—as specifically applicable. Indeed, in terms of the notice given to Mr. Moss, the record does not evidence a clear understanding that discipline was formally pursued against him on another, broader basis.

In summary, the Board has conceded that the *Loudermill* notice was deficient from a due process perspective because the Board seeks to uphold Mr. Moss's termination on different charges. It contends, however, that the deficiency was remedied in light of the termination letter's reference to Mr. Moss's conduct generally. This letter, it claims, served as sufficient notice of the charges which were being pursued against him. Again, we fail to see how this is the case. The termination letter references the same two charges in the *Loudermill* notice, as does the Board's decision. No doubt, Mr. Moss's general conduct, as opposed to the mere existence of a conviction, is detailed in the termination letter and the Board's decision. Yet, each of those documents does not specifically reference an applicable charge other than those highlighted in the *Loudermill* notice. If the *Loudermill* notice was deficient inasmuch as the charges it gave notice of were not ultimately relied upon, we fail to see how the deficiency was allegedly cured when the documents implementing and upholding Mr. Moss's termination deem the same charges as operative. We are therefore of the opinion that Mr. Moss's counsel was not without basis for remarking at the Board hearing that this case is only "about two charges." Sufficient notice otherwise is lacking in the record.[5] To the extent that the Board upheld Mr. Moss's termination on grounds other than the charges specifically identified, the termination ran afoul of Mr. Moss's due process rights, and therefore, the Board's decision should be reversed. *See* Tenn. Code Ann. § 4-5-322(h)(1) (providing that a court may reverse the decision on judicial review if it is "[i]n violation of constitutional or statutory provisions").

Here, the Board's decision specifically states that the same two charges from the *Loudermill* notice are applicable; however, the "Findings" at the conclusion of its decision fail to show that those charges were established. As previously noted, the findings are simply not responsive to the charges that are stated to apply to Mr. Moss. Moreover, the parties appear to agree that there was no evidence to support the charges

---

[5] Indeed, if the Board's own decision reflects that the same charges from the *Loudermill* notice are supposedly applicable and operative, how can it be fairly suggested that Mr. Moss should have been aware that those charges were not the basis upon which discipline against him was sought?

that were formally brought against him.  Mr. Moss notified the Fire Department of his arrest following the political rally, and given his placement on judicial diversion, he was not, in fact, convicted of a felony.

In view of the above, we agree with Mr. Moss that the Board's order upholding his termination should be reversed, and we pretermit consideration of his other raised concerns in light of our conclusion on the notice issue.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is reversed, and the case is remanded to the trial court for such further proceedings that are consistent with this Opinion, including the entry of an order reversing the decision of the Shelby County Civil Service Merit Board and ordering the Shelby County Civil Service Merit Board to issue an order reinstating Mr. Moss to his position with the Shelby County Fire Department as well as restoring his benefits including back pay.

_____
ARNOLD B. GOLDIN, JUDGE