IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 2, 2020

## VALERIE LOUISE AUGUSTUS, M.D. v. TENNESSEE DEPARTMENT OF HEALTH, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 18-708-III        Ellen Hobbs Lyle, Chancellor**

_____

**No. M2019-01502-COA-R3-CV**

_____

Appellant, a psychiatrist, was sanctioned by the Board of Medical Examiners for violation of the Tennessee Medical Practice Act.  The Chancery Court for Davidson County affirmed the Board's action, and Appellant appeals.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., joined.   RICHARD H. DINKINS, J., not participating.

Valerie Louise Augustus, M.D., Germantown, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Sue A. Sheldon, Senior Assistant Attorney General, for the Tennessee Department of Health.

### MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Appellant Valerie Louise Augustus is a psychiatrist licensed by the State of Tennessee. On June 22, 2016, the Division of Health Related Boards of the Tennessee Department of Health ("Department") filed a "Notice of Charges and Memorandum of Assessment of Civil Penalty and Costs" against Appellant. The Notice of Charges cited Dr. Augustus for the following violations of the Tennessee Medical Practice Act: (1) "unprofessional, dishonorable or unethical conduct," Tenn. Code Ann. §63-6-214(b)(1); and (2) "[g]ross health care liability or a pattern of continued or repeated health care liability, ignorance, negligence or incompetence in the course of medical practice," Tenn. Code Ann. §63-6-214(b)(4). As set out in the notice, the specific allegations against Dr. Augustus were that she: (1) "struck [a patient, P.T.,] on the buttocks with a riding crop" during a patient's session in July 2015; (2) "has struck other mental health patients with a riding crop;" and (3) "has had both a riding crop and a whip displayed in her office." The Department filed an amended Notice of Charges on August 25, 2017 and a second amended Notice of Charges on November 22, 2017. In her response to the Notice of Charges, Dr. Augustus did not deny the use of a riding crop in her practice but averred that she "did not strike the patient with the intent to cause harm or pain." Rather, Dr. Augustus explained that the "riding crop was used in a humorous exchange intended to foster the physician/patient relationship."

On January 22, 24, March 19, 21, and April 23, 2018, the Board of Medical Examiners ("Board") heard the contested case. Patient, P.T., whose complaint that Dr. Augustus struck her with a riding crop during her July 2015 visit gave rise to the investigation, testified that she had been Dr. Augustus' patient for five months. Although P.T. acknowledge that she had noticed the riding crop and whip in Dr. Augustus' office, she explained that it "never dawned on [her] that . . . it would be used [to strike patients]." P.T. further testified that during the July 2015 visit, she was very depressed, "very withdrawn," and that "[e]very time [she] spoke, it was through tears; that she was feeling very vulnerable and had no purpose for living." During the therapy session, P.T. informed Dr. Augustus that she had not followed Dr. Augustus' previous instruction to journal. P.T. testified that because she failed to follow Dr. Augustus' instruction, Dr. Augustus struck her on the buttocks with the riding crop as she was exiting the office. P.T. stated that, "I wouldn't say that it was dramatic force, but it was enough force that I kn[e]w she hit me and that it stung, and it left a bruise."

Shirley Pickering, an investigator for the State of Tennessee health-related boards, also testified. Ms. Pickering interviewed Dr. Augustus on November 23, 2015 in Dr. Augustus' office. Ms. Pickering stated that she noticed a riding crop hanging on a coat rack and a "riding crop-whip-type instrument" behind Dr. Augustus' desk. When Ms. Pickering inquired whether Dr. Augustus had struck the patient, P.T., with a riding crop, Ms. Pickering testified that Dr. Augustus answered, "Yes," explaining that "she had popped her on the bottom with the riding crop."

The Department called James G. Kyser, M.D., a psychiatrist, as an expert witness. In relevant part, Dr. Kyser testified that, in the field of psychiatry, "punishment had not been shown to be a strong predictor of learning." Dr. Kyser further stated that he was not aware of the "us[e] of objects to make contact with the buttocks of patients [being] recognized in any scientific or professional way in the psychiatric community." Dr. Kyser testified that Dr. Augustus' notes from P.T.'s July 20th session, which he had reviewed in preparation for his testimony, did not mention the use of a riding crop. Nonetheless, Dr. Kyser opined that striking a patient with a riding crop constituted "a boundary violation," and that it was "inconceivable [for him] to [conceive of] a circumstance where [a physician treating] a patient that has a documented history of physical and sexual abuse, [would] strike[] them with anything in a therapeutic setting." Dr. Kyser ultimately concluded that a psychiatrist's use of a riding crop, whip, or any other object to strike a patient constituted a violation of the standard of care.

During her testimony, Dr. Augustus admitted that she used the riding crop to "tap" and "make contact with [P.T.'s] buttocks." She testified that she had also used the crop on other patients as part of a humorous exchange when those patients failed to follow her recommendations and instructions. Dr. Augustus explained that

> those patients that thought it was funny . . . would actually say, "Well, Dr. Augustus, I'm going to set myself a goal, and I will let you hold me accountable, and if I don't reach my goal, . . . I'll pretend that I'm in trouble with you," and that's—when they would come back . . . as I talk[ed] to them and went through their visit, I ask[ed] them, "Oh, did you remember to exercise at the level that you stated?" If they said, No they didn't, [t]hen I would pick up the crop and just lightly tap them with it, and we both laughed, and that usually was the interaction.

However, Dr. Augustus denied using enough force with the crop to hurt the patient and further opined that none of her patients thought her use of the crop was anything other than humorous.

C.M., another of Dr. Augustus' patients on whom she used the crop, testified that Dr. Augustus "could be serious . . . but then she was funny as well." C.M. described Dr. Augustus as "very supportive and encouraging." Concerning the use of the crop, C.M. explained that Dr. Augustus had recommended that she exercise and lose weight to help with her depression. C.M. stated that Dr. Augustus had "tap[ped]" her on the buttocks with the riding crop on at least three occasions; however, C.M. considered "the stick" to be "a joke," "all in humor and fun." She explained that Dr. Augustus use of the crop was never painful and that she "could barely feel it." C.M. described the practice as "more of a symbolic thing."

- 3 -

Dr. Augustus called William C. Wolters, J.D., M.D., as her expert in psychiatry. Dr. Wolters opined that Dr. Augustus' use of the riding crop may have crossed a boundary, but it was not a deviation from the standard of care. He opined that, "Humor is important, and I think, I can understand you don't want someone to leave on kind of a down note. You want to kind of put things in perspective and bring some humor in and some . . . encouragement."

Following the hearing, the Board made several findings of fact, including that:

> 2. . . . During the July 20, 2015, appointment, the Respondent made contact with P.T. on the buttocks with a riding crop.
> 3. Respondent has made contact with other mental health patients with a riding crop, whip, or other object.
> 4. Respondent has had both a riding crop and a whip displayed in her office. Additionally, the Respondent compared her patients to mules.
> 5. There's no evidence in psychiatric literature to support the use of touching a patient with an implement as part of treatment; this is supported by the A.P.A.'s commentary on ethics and practice.

Based on the foregoing findings, in its order of May 2, 2018, the Board concluded that Dr. Augustus' use of a riding crop or other object on her patients constituted: (1) unprofessional and unethical conduct in violation of Tennessee Code Annotated section 63-5-214(b)(1); (2) ignorance, negligence or incompetence in violation of section 63-6-214(b)(4); and (3) a violation of the standard of care in violation of section 63-6-214(b)(4). The Board suspended Dr. Augustus' medical license for at least 60 days and ordered her to submit to an assessment of her ability to safely practice psychiatry and to attend a two-day course in medical ethics, boundaries, and professionalism. The Board also placed Dr. Augustus on probation and imposed a penalty of $10,000 plus the costs of the administrative proceedings, up to maximum of $50,000.

Dr. Augustus petitioned the Board for reconsideration, but her petition was denied. Thereafter, she sought judicial review in the Chancery Court of Davidson County ("trial court"). As support for her petition, Dr. Augustus alleged that she was denied due process because the Notice of Charges was constitutionally deficient in that it failed to provide adequate notice of the issues to be tried. Specifically, Dr. Augustus argued that the Notice of Charges alleged that she "struck" her patients, while the Board found that she "made contact" with them. Dr. Augustus maintained that the distinction between "struck" and "made contact" was "significant because those two phrases describe very different types of conduct." Following its review of the Board's decision, the trial court upheld the Board's decision by order of July 18, 2019. Dr. Augustus appeals.

The scope and standard of judicial review in this appeal is governed by the Uniform Administrative Procedures Act, specifically Tennessee Code Annotated sections

- 4 -

4-5-322(h)-(i), which provide:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.
> (i) No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.

Tenn. Code Ann. § 4-5-322(h)-(i). Under the statutory scheme, "[c]ourts do not review the fact issues de novo and, therefore, do not substitute their judgment for that of the agency as to the weight of the evidence, even when the evidence could support a different result." *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988) (internal citation omitted) (citing *Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn. 1977); *Grubb v. Tennessee Civil Serv. Comm'n*, 731 S.W.2d 919, 922 (Tenn. Ct. App. 1987); *Hughes v. Board of Comm'rs*, 319 S.W.2d 481, 484 (1958)).

Furthermore, we are cognizant of the fact that Dr. Augustus is proceeding *pro se* in this appeal. Courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. *Garrard v. Tenn. Dep't of Corr.*, No. M2013-01525-COA-R3-CV, 2014 WL 1887298, at *3 (Tenn. Ct. App. May 8, 2014) (internal citations omitted). Therefore, the courts give pro se litigants, who are untrained in the law, a certain amount of leeway in drafting their pleadings and briefs. *Paehler v. Union Planters Nat'l Bank, Inc*., 971 S.W.2d 393, 397 (Tenn. Ct. App. 1997). "Pro se litigants who invoke the complex and technical procedures of the courts assume a very heavy burden." *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1989). While a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000), "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000).

Instead, pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere. *Diggs v. Lasalle Nat. Bank Assoc., et al.*, 387 S.W. 3d 559, 563 (Tenn. Ct. App. 2012); *Brown v. Christian Bros. University*, No. W2012-01336-COA-R3-CV, 2013 WL 3982137, at *3 (Tenn. Ct. App. Aug. 5, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014).

With the foregoing in mind, we first address the fact that Dr. Augustus' appellant brief is not compliant with Rule 27 of the Tennessee Rules of Appellate Procedure, which states that an appellant's brief shall contain:

> (1) A table of contents, with references to the pages in the brief;
> (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;
> (3) A jurisdictional statement in cases appealed to the Supreme Court directly from the trial court indicating briefly the jurisdictional grounds for the appeal to the Supreme Court;
> (4) A statement of the issues presented for review;
>
> ***
>
> (7) An argument, which may be preceded by a summary of argument, setting forth: (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

Tenn. R. App. P. 27(a). Here, Dr. Augustus' brief fails to comply with the foregoing requirements. Most glaringly, the brief does not articulate a cogent argument with citations to the record or controlling authority, and it does not set out the issues presented for review. Rather, Dr. Augustus uses her brief "to provide additional evidence supporting the brief . . . seeking Judicial Review [that] was filed in Chancery Court . . ." To this end, the brief makes several unsupported references to events that occurred after the entry of the Board's order and are, therefore, not pertinent to our review of the Board's decision.

Despite the shortcomings in her opening brief, it is clear that Dr. Augustus' argument for reversal of the Board's decision centers on her belief that the Board impermissibly "change[d] the language of the charge after the State failed to prove [its] case." In her reply brief, she summarizes her main contention on appeal as follows:

> What I have contested during this process is the accusation that I "struck" PT and other unnamed patients. The written allegation of PT uses the word "struck" and claims that she was bruised as a result of my contact with her. It is clear that PT's complaint was of contact of sufficient force to cause such an injury. The expression "made contact with" does not describe what is alleged by PT.

From these statements, it is clear that Dr. Augustus argues that the Notice of Charges was insufficient to inform her of the specific charges against her. Furthermore, Dr. Augustus brief states that "the panel indicat[ed] during deliberations that the evidence did not support the charge," and she "seek[s] a full review of the original matter brought by the Department of Health." We perceive this statement as an argument that the Board's decision was "[u]nsupported by evidence that is both substantial and material in the light of the entire record" Tenn. Code Ann. §4-5-322(h)(5). Because we are able to glean the gravamen of Dr. Augustus' arguments from her brief, and because our review is limited to the record of the Board's proceedings, which are included in our record, we exercise our discretion to proceed with substantive review. We state the issues as follows:

1. Whether Dr. Augustus received adequate notice of the charges against her.

2. Whether the Board's decision is supported by substantial and material evidence.

Turning to the question of whether Dr. Augustus received adequate notice of the charges against her, in the chancery court, Dr. Augustus asserted that the Board's decision should be reversed

> because the Board concluded that Dr. Augustus violated the Tennessee Medical Practice Act and imposed sanctions on Dr. Augustus based on findings of fact that were not included in the Notice of Charges, specifically a finding that Dr. Augustus merely "made contact" with rather than "struck" the patients, as was alleged

The gravamen of Dr. Augustus' argument is that the difference in word choice between the words "struck" and "contact" is legally significant to an extent that she was prejudiced by not having received notice before the contested case hearing that merely "making contact" with patients could constitute a violation of the Tennessee Medical Practice Act and subject her to sanctions. These assertions were rejected by the chancery court in its final order, to-wit:

> [T]he Petitioner's due process rights were not violated. The record and law establish that the Notice of Charges, in conjunction with the Petitioner's

- 7 -

actual knowledge of the Department's legal theory of the case prior to the contested case hearing obtained through discovery and pretrial proceedings, provided the Petitioner with sufficient notice as required by Tennessee law.

*\*\**

[T]he Petitioner in this case cannot credibly argue that she did not know the event(s)/conduct that was[/were] subject to discipline in this case and that she did not know the Department's legal theory was not limited to any specific degree of force in the Petitioner's use of the riding crop and/or whip.

The Uniform Administrative Procedures Act sets forth the various procedures for hearing and determining contested cases at the agency level and on appeal. As is relevant to this appeal, in any contested case, the parties are entitled to "reasonable notice," which must include "[a] statement of the . . . nature of the hearing, . . . [and a] statement of the legal authority and jurisdiction under which the hearing is to be held." Tenn. Code Ann. §§ 4-5-307(a), (b)(1)-(2). Relevant to Dr. Augustus' case, Tennessee Code Annotated section 4-5-307(b)(3) requires that the notice include "a short and plain statement of the matters asserted." Furthermore, because the Notice of Charges in this case involved Dr. Augustus' medical license, Tennessee Code Annotated section 4-5-320(c) also applies:

(c) No revocation, suspension, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct that warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.

Tenn. Code Ann. § 4-5-320(c). These requirements are consistent with "basic due process," which requires "notice reasonably calculated under all the circumstances, to apprise interested parties" of the claims of the opposing parties. *McClellan v. Bd. of Regents*, 921 S.W.2d 684, 688 (Tenn. 1996) (quoting *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950)). The purpose of due process requirements is to notify the individual in advance in order to allow adequate preparation and reduce surprise. *Id.* (citing *Memphis Light, Gas, and Water Div. v. Craft*, 436 U.S. 1, 14 (1978)).

Turning to the administrative record, prior to the contested case hearing, Dr. Augustus was in receipt of Dr. Kyser's expert disclosure, wherein he opined that any patient

contact with a riding crop, regardless of the characterization of that contact, constituted a deviation from the standard of care by Dr. Augustus. Dr. Kyser's disclosure states, in relevant part:

> Allegations have been made regarding inappropriate behavior in the workplace. Dr. Augustus allegedly has engaged in physically striking or "tapping" her patients in the reported context of clinical motivation and behavior modification. Specifically, these behaviors have included the use of a "riding crop," which she has admittedly used at the end of therapeutic sessions. Such behaviors are highly unusual and are not seen as fitting in the context of any recognized appropriate psychiatric treatment modality. Dr. Augustus has described these physical behaviors as, "a treatment modality," which includes physical contact with the patient's buttocks. At other times, she has described the behavior as humoring the patient, "a joke."

In its final order, the trial court noted that

> the Petitioner prepared a defense strategy to the charges in this case which chose to focus on the Petitioner's lack of intent, degree of physical harm inflicted and the purported "humorous" context of the contact. This defense strategy was employed even though the Petitioner had knowledge prior to the contested case hearing that the Department's expert intended to testify that the Petitioner had violated the standard of care **regardless of whether the conduct was described as a strike or a tap** and that the Board has the ultimate discretion by statute to decide the applicable standard of care for each case based on the statewide standard of minimal competency and their own expertise. The defense strategy to focus on intent, physical harm and humor was a strategic decision; it was not a lack of due process.

(Emphasis added). The administrative record supports the trial court's finding that Dr. Augustus was on notice that many different words could and would be used to describe the conduct alleged in the Notice of Charges. Perhaps the best evidence of this are Dr. Augustus' own answer to the Notice of Charges and her responses to the Department's requests for admissions, wherein she refers to her actions with the riding crop using various verbs. For example, in her answer, Dr. Augustus avers that: (1) "The respondent did not **strike** the patient with the intent to cause harm or pain;" (2) "The riding crop **was used in a humorous exchange** intended to foster the physician/patient relationship;" and (3) "The respondent has never **hit** any patient with the intent to cause harm or pain." (Emphases added). Likewise, in her responses to the Department's Requests for Admissions, Dr. Augustus states:

REQUEST #9: During the July 20, 2015, appointment, you struck PT on the buttocks with a riding crop.

RESPONSE: Denied as stated. It is admitted that on July 20, 2015, Dr. Augustus pretended to strike the patient on or about the buttocks with a riding crop. It is specifically denied that Dr. Augustus actually struck the patient with force that would cause pain or injury as has been alleged.

***

REQUEST #12: You have struck other mental health patients on the buttocks with a riding crop.

RESPONSE: Denied as stated. It is admitted that on occasion, with a few specific patients, Dr. Augustus has pretended to strike the patients on or about the buttocks with a riding crop. It is denied that Dr. Augustus actually struck any patient with force that would cause pain or injury — physical or emotional.

Likewise, in her verified responses to the Department's interrogatories, Dr. Augustus stated that she never "struck . . . with sufficient force to cause injury or pain either physical or emotional." Nonetheless, Dr. Augustus acknowledged that she "made contact with or lightly touched [or "lightly tapped" at least eight patients] . . . on or about the buttocks with a riding crop . . . in the context of a humorous discussion that fostered the physician-patient relationship."

Finally, at a pre-trial hearing with the Administrative Law Judge ("ALJ"), the parties discussed their respective theories of the case. When asked by the ALJ whether his client was denying that she struck P.T. with the riding crop, Dr. Augustus' counsel stated that "it is a matter of semantic distinction as far as the State goes" and noted that "it is a matter of great importance to Dr. Augustus that the word 'struck' was used." However, Dr. Augustus' counsel ultimately acknowledged, "[S]o, yes, sir, I agree that she admitted to striking, if you use that word sort of generically." The Department responded by noting that when Dr. Augustus was interviewed by the State investigator, Dr. Augustus used the words "strike" and "pop," as well as "lightly struck" and "lightly popped," and that "[w]hen [she] retained counsel, the[se] characterization[s] changed to 'lightly tap'." As set out above, when Ms. Pickering inquired whether Dr. Augustus had struck the patient, P.T., with a riding crop, Dr. Augustus answered, "Yes," explaining that "she had popped her on the bottom with the riding crop."

Despite Dr. Augustus' decision to defend her actions by arguing that her intent was never to hurt or injure her patients, the gravamen of the Notice of Charges is not whether Dr. Augustus inflicted (or intended to inflict) physical harm or pain on her patients, nor are the charges based on the amount of force Dr. Augustus used in wielding

- 10 -

the riding crop. Rather, the gravamen of the charges is Dr. Augustus' use of a riding crop in any manner during the patients' therapy sessions. This is a point the Department notes in its responses to Dr. Augustus' requests for admissions. In request number 25, Dr. Augustus seeks an admission that the Notice of Charges was based on allegations that Dr. Augustus struck P.T. on her buttocks with the riding crop with sufficient force to cause pain and bruising. In response, the Department states, *inter alia*, "[The Notice of Charges] does not allege the type of force that was used or reference pain or bruising." From the administrative record, it is clear that Dr. Augustus was (or should have been) on notice that the conduct alleged to be a violation of the Tennessee Medical Practice Act was not limited to the word "struck." Semantics aside, Dr. Augustus was not prejudiced in her defense because, prior to the contested hearing, she knew the facts, incidents, allegations, and statutory violations that would be the focus of the hearing.

Turing to the second issue, we conclude that the Board's decision is supported by substantial and material evidence. The Board found that Dr. Augustus violated sections 63-6-214(b)(1) and (4) of the Tennessee Medical Practice Act. The Board's decision was based on several factual findings, *supra*. The Board's factual findings included that: (1) "During the July 20, 2015, appointment, [Dr. Augustus] made contact with P.T. on the buttocks with a riding crop;" and (2) "[Dr. Augustus] made contact with other mental health patients with a riding crop, whip, or other object." As noted above, in her responses to the Department's interrogatories, Dr. Augustus acknowledged that she "made contact with or lightly touched [or "lightly tapped" at least eight patients] . . . on or about the buttocks with a riding crop . . . ." In short, Dr. Augustus' own statements provide sufficient evidence to support the Board's findings.

To the extent Dr. Augustus urges this Court to reweigh the evidence adduced at the contested hearing, we decline. As noted above, in reviewing an administrative decision, this Court does "not review the fact issues de novo and, therefore, do[es] not substitute [its] judgment for that of the agency as to the weight of the evidence, even when the evidence could support a different result." *Wayne County*, 756 S.W.2d at 279. Here, there is evidence to support the Board's finding that Dr. Augustus used a riding crop with patients in a therapeutic setting. Furthermore, there is evidence, e.g., Dr. Kyser's testimony, to support the Board's decision that such practice constituted a deviation from the standard of care and was a violation of the Tennessee Medical Practice Act.

For the foregoing reasons, we affirm the trial court's order. We pretermit discussion of any remaining arguments, including Dr. Augustus' vague reference to the sanctions imposed by the Board. In the first instance, this issue was not raised in the trial court and is, therefore, waived. *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009); *In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009); *Dye v. Witco Corp.*, 216 S.W.3d 317, 321 (Tenn. 2007). Furthermore, the choice of "[t]he appropriate remedy is peculiarly within the discretion of the [agency]." *Robertson v. Tenn. Bd. of Soc. Worker Certification*,

227 S.W.3d 7, 13-14 (Tenn. 2007) (quoting *McClellan v. Bd. of Regents of State Univ.*, 921 S.W.2d 684, 693 (Tenn. 1996)). As such, the reviewing court will review only whether the remedy is "unwarranted in law" or "without justification in fact." *Id.* (citing *Mosley v. Tenn. Dep't of Commerce & Ins.*, 167 S.W.3d 308, 321 (Tenn. Ct. App. 2004), and *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185-86 (1973)). Here, the facts and the legal conclusion drawn by the Board are supported by material evidence in the record; as such, the sanctions imposed on Dr. Augustus are not without justification in fact, nor unwarranted in law.

The trial courts order is affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Valerie Louise Augustus, for all of which execution may issue if necessary.

s/ Kenny Armstrong

KENNY ARMSTRONG, JUDGE
